2024 PA Super 106

| | | |
|---|---|---|
| GARY STOLEY AND ROSE MARIE NEHLS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| GENE W. WAMPLER, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF DOROTHY S. WAMPLER AND RUSSELL E. WAMPLER AND MARY JO WAMPLER | : | No. 712 WDA 2023 |

Appeal from the Judgment Entered August 21, 2023
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s): Case No. 1230 of 2020

BEFORE: BOWES, J., KUNSELMAN, J., and MURRAY, J.

OPINION BY BOWES, J.:                                      **FILED: MAY 28, 2024**

Gary Stoley and Rose Marie Nehls (collectively "Plaintiffs") appeal from the quiet title judgment entered upon the court's March 6, 2023 non-jury verdict, as modified by the June 6, 2023 order granting in part Plaintiffs' motion for post-trial relief. We vacate the judgment and the verdict, as well as the order adjudicating post-trial relief, and remand with instructions.

This action concerns land in Westmoreland County that was once a single parcel owned by the Wampler family. Specifically, W.E. and Gertrude Wampler acquired the property by a 1946 deed and resided in a house thereon, presently designated 531 State Route 130 ("S.R. 130"). A second house was built on the parcel, farther back from the road, in which their son Theodore and his wife Dorothy resided. The parcel was subsequently divided,

and the back lot was conveyed to Theodore and Dorothy by a 1958 deed, at some point becoming 533 S.R. 130. Their children, including Gene W. Wampler ("Executor") and Russell E. Wampler ("Russell") grew up at 533 S.R. 130. The house was somewhat screened by a row of pine trees that grew approximately ten feet from the side of the garage. However, since the original parcel remained within the family, the exact location of the boundary between the lots was not a matter of concern, and maintenance of the whole area was done by Theodore and his sons.[1]

Russell acquired the front lot from his grandparents in 1977, and a subsequent deed placed 531 S.R. 130 in the name of Russell and his wife Mary Jo (collectively "the Wamplers"). Theodore and Dorothy continued to reside at 533 S.R. 130 until approximately 2005, when they moved to a nursing

---

[1] We offer the following image, which is a version of Plaintiffs' Exhibit 18 from which we omitted extraneous detail, solely to aid visualization of the property at issue:



home. Theodore died in 2008, leaving Dorothy the sole owner of the back parcel until she died testate a few months later.

In 2016, Executor decided to sell the home, which had fallen into a state of disrepair, through a private auction. He opted to utilize the services of Eugene Gornik, a friend who was a professional auctioneer. According to Mr. Gornik, either Executor or Russell told him prior to the auction that the property line for 533 S.R. 130 was the line of pine trees near the side of the house, and he conveyed that information to Plaintiffs before they became the successful bidders.

Plaintiffs set about cleaning up the property to rent. Believing that the pine trees next to the house were roughly on the boundary between the parcels, they sought and received the Wamplers' permission before having them removed, along with most other vegetation on the land, a partially collapsed barn, and multiple dumpsters full of junk. In their place Plaintiffs installed gravel and a prefabricated steel structure.

In connection with these modifications, Plaintiffs hired surveyor Charles L. Zelenak, Jr., to determine the boundaries of their parcel. However, Mr. Zelenak discerned that, based upon the description of the land in the deed Executor supplied to Plaintiffs, the metes and bounds did not designate a completed rectangle, and the boundary line between their plot and the Wamplers' land actually intersected their house such that roughly ten feet of the structure closest to the felled trees was not on their land.

Upon sharing this discovery with Plaintiffs, Mr. Zelenak proposed resolving the issue by having him prepare a survey and deed that would place the property line one foot away from the house, with a four-foot easement for maintenance purposes. **See** N.T. Trial, 7/25/22, at 111, 118, 153-54. ***See also id***. at 162-63 (Mr. Zelenak explaining that he had not obtained the physical or parol evidence at the time he proposed the compromise deed and survey placing the boundary one foot from the dwelling).

When that ultimately proved unsuccessful, Plaintiffs again retained Mr. Zelenak to perform a full field survey of their property, this time utilizing parol evidence and seeking out monuments that might otherwise establish a recognized boundary. From examining Plaintiffs' deed in connection with others in the chain of title of nearby parcels, questioning neighbors including the Wamplers, and locating an angle iron in line with the stumps of the trees Plaintiffs removed, Mr. Zelenak reached the professional opinion that the correct boundary of 533 S.R. 130 was not as described in the deed, but was the line of pine trees that stood near the house for approximately seventy-five years. ***Id***. at 122-30.

We offer the following image, again purely as an aid to visualizing the area of land in dispute and not as a strictly accurate representation thereof:



*See* Plaintiffs' Exhibit 18 (modified).

Based upon Mr. Zelenak's findings, Plaintiffs filed the instant action against Executor and the Wamplers (collectively "Defendants") seeking to obtain title to the land between the line suggested by their deed and the line formed by the trees and the found angle iron. In their complaint, Plaintiffs averred that they were the true owners of the disputed area based upon (1) the erroneous description in their deed, the actual description in the Wamplers' deed, the location of monuments along the tree line, and the intent of the parties when Plaintiffs' parcel was severed; (2) the doctrine of consentable lines; (3) adverse possession; and (4) equitable estoppel. *See* Plaintiffs' Complaint, 3/2/20, at 8-11.

Defendants filed a joint answer and new matter wherein they asserted that the area in dispute was limited to a sliver of land necessary to encompass the Plaintiffs' dwelling, admitted that Plaintiffs and their predecessors have

been in possession of a portion of that area, denied ever designating the tree line as the boundary line, and averred that Plaintiffs' predecessors never claimed ownership of or possessed the full disputed area defined by Plaintiffs. **See** Answer, New Matter and Counterclaim, 8/17/20, at 3-9, 15-16.[2]

The case proceeded to a non-jury trial that took place over two days in July and December 2022. As witnesses Plaintiffs produced auctioneer Mr. Gornik and surveyor Mr. Zelenak, both of whom indicated that Russell stated the property line was the line of trees. **See** N.T. Trial, 7/25/22, at 25-26, 127. Plaintiffs themselves testified that Mr. Gornik had informed them of that boundary location. **Id**. at 43, 81. Of note, the trial court undertook a significant examination of Mr. Zelenak, repeatedly expressing confusion about his testimony. **See**, **e.g.**, **id**. at 95 ("I'm confused."), 112 ("I'm still confused[.]"), 114 ("I'm still confused."), 116 ("I'm just so confused."). Also pertinent to this appeal, counsel for the Wamplers questioned Mr. Zelenak, over Plaintiffs' objection, about the documents he drafted in an effort to achieve an amicable resolution of the border dispute that would save the parties the time and expense of trial. **Id**. at 151-58.

---

[2] The Wamplers' answer and new matter also included counterclaims against Plaintiffs for alleged flooding of their home caused by the water flow changes resulting from Plaintiffs' modifications to the land, as well as damage done to the driveway easement. **See** Answer, New Matter and Counterclaim, 8/17/20, at 17-18. However, the trial court ultimately ruled in Plaintiffs' favor on those claims, and the Wamplers have not filed a cross-appeal challenging that portion of the verdict. Therefore, we shall not discuss the Wamplers' counterclaims further in this opinion.

Russell and Executor testified after the Plaintiffs rested. Both denied ever telling anyone that the property line was the tree line. Instead, they maintained that the property line was at an uncertain point between the tree line and the house. *See*. N.T. Trial, 12/8/22, at 48, 80, 123.

After the close of evidence, while discussing the filing of proposed findings of facts and conclusions of law, the court highlighted that, although equitable relief in the nature of reformation of Plaintiffs' concededly-erroneous deed was available, no party requested equitable relief. *Id*. at 150. Moreover, as for Plaintiffs' legal action to quiet title, they never proffered a correct deed that they sought to have filed to satisfy their claim. *Id*. at 153. When Plaintiffs asked to re-open the record and submit a proposed deed, the court rejected the request, opining that creating a new deed would amount to the equitable relief of deed reformation that was not sought. *Id*. at 154-55. The court expressed concern that the proceedings were all for naught because "no one asked [it] to do what probably needs [to be] done, and that's reform" the deed. *Id*. at 155. Plaintiffs represented that they would amend the complaint. *Id*. at 157.

However, Plaintiffs did not seek to amend the complaint to conform to the evidence. Instead, their proposed findings and conclusions suggested that the court find that the 2016 deed by which Plaintiffs acquired their property was defective in that it contained the same inaccurate description of the property included in the prior deeds in its chain of title that placed the

boundary line through the dwelling, which was contrary to the intention of the parties. ***See*** Plaintiffs' Proposed Findings of Fact, Conclusions of Law and Order of Court, 2/16/23, at 13-14. They asked the court to hold that the correct property line was as Mr. Zelenak indicated in his 2017 survey and compel the parties to execute deeds that reflect Mr. Zelenak's placement of the boundary along the tree line.[3] ***Id***. at 14.

Defendants filed a joint post-trial submission in which they acknowledged that the Plaintiffs' deed is defective because the description runs the property line through the house, and that equitable reformation is the proper remedy. ***See*** Defendants' Proposed Findings of Fact and Conclusions of Law, 12/17/23, at 17-18. However, they echoed the trial court's prior statements that, because Plaintiffs did not request equitable relief, the court was unable to grant an equitable reformation. ***Id***. at 18. As for the relief Plaintiffs did request, Defendants observed that Plaintiffs failed to prove that they were in possession of the entirety of the disputed area, and that they did not establish a right to relief in any event because they did not proffer sufficient evidence demonstrating that the deed reflected an intent to establish the boundary at the tree line or that they held title to the disputed

---

[3] It appears that this was a misstatement and that Plaintiffs actually desired a declaration that the property line is where Mr. Zelenak indicated in his November 4, 2020 survey, which was admitted as Plaintiffs' Exhibit 17 at trial.

area through adverse possession or the doctrine of consentable lines. *Id*. at 18-19.

On March 6, 2023, the trial court handed down its verdict in the form of an order of court. The court first held that Plaintiffs did not satisfy the elements of a quiet title action because they failed to prove that they were in possession of the disputed area, as they offered no testimony to establish that they exercised dominion over the land between the house and the tree line. *See* Order, 3/6/23, at ¶ 1. In this vein, the court further elaborated:

a. Both parties admit that the boundary line in Plaintiffs' deed goes through the existing dwelling, so the deed itself does not give Plaintiffs' possession of the ten-foot disputed portion of land.

b. The testimony and evidence presented were insufficient to establish consentable lines or adverse possession, as occupation did not occur for a period of twenty-one years, and possession was not exclusive, notorious, distinct, or hostile. The only testimony regarding Plaintiffs' use of the property at issue was the cutting down of trees, and they asked permission from [the Wamplers] to take that action.

c. Although Plaintiffs argued that possession was established by the survey conducted showing parole [*sic*] evidence of the property line, including from pins and fence posts, the licensed surveyor [who] conducted that survey testified that he only used that parole [*sic*] evidence to attempt a resolution of the matter once it was clear that the boundary lines in Plaintiffs' deed did not close.

*Id*. (cleaned up). The trial court rejected Plaintiffs' claim for equitable estoppel on the basis that, since they only spoke to Mr. Gornik at the auction, and not to any of Defendants, they did not prove inducement and justifiable reliance. *Id*. at ¶ 2.

- 9 -

Despite its expressed belief that it lacked the ability to award equitable relief in the absence of a request by Plaintiffs, the court went on to hold as follows:

This court's findings eliminate any adequate remedy at law, as Plaintiffs fail to satisfy the elements of any claim set forth in their complaint. However, the testimony and evidence presented to this court by both parties establishes that the existing boundary in Plaintiffs' deed is in error. Further, [Russell] testified that the boundary line should be somewhere between the back of Plaintiffs' residence and the tree line. Therefore, this court will exercise its equitable powers to reform the deed, as there is no additional or differing evidence that would be presented if Plaintiffs would have amended their complaint to include a request for reformation of the deed, and judicial economy and efficiency would not be served for either party if this court would dismiss the action without resolving the admitted error.

    a. In exercising its equitable powers, this court finds that Plaintiffs' deed shall be reformed to move the boundary line that currently runs through Plaintiffs' existing dwelling to a location five feet beyond the back of Plaintiffs' dwelling. Plaintiffs are directed to prepare a deed in accordance with this ruling and file it of record. Defendants are directed to cooperate as necessary in accomplishing same.

*Id*. at ¶ 3 (cleaned up).

Plaintiffs filed a motion for post-trial relief asserting that: (1) the trial court erred in applying equitable principles to its quiet title claim; (2) their claim was pursuant to Pa.R.C.P. 1061(b)(3), which requires no proof of possession; (3) the court misrepresented Mr. Zelenak's testimony about his use of parol evidence in concluding the location of the boundary line and improperly considered evidence of settlement negotiations; and (4) Plaintiffs were entitled as a matter of law, not equity, to a ruling that the property line

is ten feet away from their house. By order of June 6, 2023, the trial court granted Plaintiffs' motion to the extent that it challenged its exercise of equitable powers, struck paragraph three from the March 6, 2023 order, and denied the motion in all other respects.

Plaintiffs filed a timely notice of appeal and complied with the trial court's direction to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court thereafter supplied a Rule 1925(a) opinion, the parties presented their arguments to this Court at oral argument, and we are prepared to address Plaintiffs' appellate issues, which they state as follows:

> A. Whether the trial court committed an error of law in applying [Rule] 1061(b)(1) rather than applying [Rule] 1061(b)(3) in analyzing the evidence offered at trial and in making its findings and in failing to *sua sponte* amend the pleadings to conform to the proper cause of action as established by the evidence.
>
> B. Whether the trial court committed an error of law and/or abused its discretion in ignoring the uncontradicted, credible and competent evidence that established the property line ten feet from the edge of the dwelling.
>
> C. Whether the trial court committed an error of law and/or abused its discretion in considering any evidence surrounding Mr. Zelenak's attempts to resolve the dispute between the parties as it is precluded under Rule 408 of the Pennsylvania Rules of Evidence.

Plaintiffs' brief at 4 (unnecessary capitalization omitted).

Before undertaking an examination of Plaintiffs' issues, we consider the pertinent legal principles. Initially we observe:

> Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and

whether the trial court erred in applying the law. Upon appellate review, the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

***Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare***, 299 A.3d 937, 956 (Pa.Super. 2023) (cleaned up).

Next, we review the substantive law. "The purpose of a quiet title action is to settle competing claims to interests in property or to determine right or title or the validity of any deed affecting any interest in land." ***Cornwall Mountain Investments, L.P. v. Thomas E. Proctor Heirs Tr.***, 158 A.3d 148, 160 (Pa.Super. 2017). The litigation of an action to quiet title is an action at law governed by the Rules of Civil Procedure. ***See*** Pa.R.Civ.P. 1061-68.

As Plaintiffs' issues involve determining which particular subsection of Rule 1061(b) governs the instant action, we deem it useful to consider the background of the Rule's adoption. "An action to quiet title is not a proceeding in equity, but an action at law created by the rule as a substitute for a number of statutory remedies formerly available to persons seeking to establish or to clear title to lands or interests therein." 4 Goodrich-Amram 2d § 1061(b):1 (footnotes omitted). Initially, "[r]emoval of such clouds [on title] was the exclusive province of equity that acted through a bill *quia timet*." 4 Goodrich-Amram 2d § 1061(b):3. Thereafter, "various statutes were passed which gave remedies at law for portions of the field within the scope of the equity proceedings." ***Id***.

> The effect of such statutes was to exclude jurisdiction in equity *pro tanto* and leave a party to a legal remedy. However, the residue of equitable jurisdiction not included within the scope of the statutes remained unimpaired and available to assist in the elimination of clouds on title. The action to quiet title now gives jurisdiction on the law side of a court to adjudicate every kind of dispute that a bill *quia timet* could adjudicate, thereby removing the last vestige of equitable jurisdiction in these matters.

*Id*. Nonetheless, "[t]he action to quiet title is not an all-inclusive remedy for the disposition of every problem relating to land titles. There will be substantial areas of equity jurisdiction wholly outside the reach of an action to quiet title." *Id*.

In sum, "although an action to quiet title is an action at law, it embraces all the equitable jurisdiction that was formerly exercisable under a bill *quia timet*," but no further equitable jurisdiction. 4 Goodrich-Amram 2d § 1061(b):1 (footnote omitted). However, "[a]ny form of equity proceeding that is not an action '*quia timet*' is excluded from the scope of the rules even though it may involve land titles or the clearing of land titles." 4 Goodrich-Amram 2d § 1061(b):3 (footnote omitted). Notably, reformation of a deed is an equitable remedy that is **not** available in an action at law filed pursuant to Rule 1061 to quiet title. *See MacKubbin v. Rosedale Mem'l Park, Inc.*, 198 A.2d 856, 857 (Pa. 1964).

With this history in mind, we examine the language of Rule 1061, which provides in pertinent part that a quiet title action may be brought:

> (1) to compel an adverse party to commence an action of ejectment;

(2) where an action of ejectment will not lie, to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land; [or]

(3) to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land[.]

Pa.R.Civ.P. 1061(b).[4, 5]

From this, we discern the following import in the distinct subsections of Rule 1061. When a quiet title action is commenced by plaintiffs who are asserting title to land for which they do not currently hold title, but for which they allege a right to immediate possession, then the essential first step is to figure out who currently has possession. If the plaintiffs are in possession but the defendants have some basis to claim an interest in the land, then subsection (b)(1) is properly utilized to compel the defendants to pursue ejectment. However, if the defendants are in possession of land that the plaintiffs claim should be theirs, then the plaintiffs' quiet title complaint is

---

[4] The Rule also allows for an action to obtain possession of land sold at a judicial or tax sale. **See** Pa.R.Civ.P. 1061(b)(4). That provision has no bearing on the instant case.

[5] Concerning the difference between an action to quiet title and an action of ejectment, we observe that "quiet title serves to determine the relative and respective rights of all potential title holders." **Becker v. Wishard**, 202 A.3d 718, 721-22 (Pa.Super. 2019). "The purpose of an ejectment action as opposed to quiet title is not to determine the relative and respective rights of all potential title holders, but rather the immediate rights between plaintiff and defendant involved in that particular litigation." **Siskos v. Britz**, 790 A.2d 1000, 1006 (Pa. 2002) (internal quotation marks omitted).

inappropriate and they are required to instead file an ejectment action. **See Siskos v. Britz**, 790 A.2d 1000, 1008 (Pa. 2002) ("When an action in ejectment is maintained in conjunction with an action to quiet title, the proper course of action is for the trial court to proceed solely on the action in ejectment." (cleaned up)).

A claim pursuant to subsection (b)(2) is apt if no action in ejectment is available because the complaint does not involve whether someone out of possession should be in possession, but rather that the plaintiffs seek a decision from the court about something purporting to affect their interest in the land. Examples of subsection (b)(2) actions include whether the plaintiffs took title subject to a mortgage, had an easement by implication, or had a right to extract subsurface minerals from the land in question, as well as a situation in which equitable owners with no right of possession desire a ruling on the validity of a restrictive covenant. **See** 4 Goodrich-Amram 2d § 1061(b):9 (collecting cases).

However, if the plaintiffs' complaint is that the defendants should be compelled to do something with a document affecting the plaintiffs' title, then a subsection (b)(3) action is founded and possession is immaterial. Examples of plaintiffs in subsection (b)(3) lawsuits include a landowner seeking to compel a mortgagee to mark its lien that was discharged in bankruptcy as satisfied, or a county asking to compel a mortgage registration company to

record its assignments so the fees could be collected. ***See*** 4 Goodrich-Amram 2d § 1061(b):12 (collecting cases).

Mindful of the above, we turn to the case *sub judice*, addressing all Plaintiffs' related questions together. As detailed above, although Plaintiffs represented at trial that they would amend the complaint when the trial court questioned the suitability of their choice to file a quiet title action pursuant to Rule 1061, they failed to do so. Instead, they doubled down on the propriety of Rule 1061(b)(3) in their post-trial filings and in this appeal.

In this Court, Plaintiffs remain steadfast in contending that the equitable reformation of the deed ordered by the court's initial verdict was unsound because the errors to the deed were not the product of a mutual mistake and, in any event, the choice of a boundary line five feet from the dwelling was randomly selected rather than justified by the evidence. ***See*** Plaintiffs' brief at 24-25. They further maintain that proof of possession was not a requisite to their subsection (b)(3) quiet title claim and that the court should have compelled Defendants to file a deed that conformed with the parties' intent to convey the disputed area to Plaintiffs. ***Id***. at 20-21.

Alternatively, Plaintiffs argue that even if the trial court properly analyzed their claim pursuant to subsection (b)(1), their evidence did establish that they had possession of the disputed area, particularly the land on which their house was located, and were entitled to a deed recognizing their title

thereto.[6]  **Id**. at 22-23.  They highlight Mr. Zelenak's expert testimony, uncontradicted by anyone trained in the field, that the actual boundary suggested by the relevant deeds, monuments, and parol evidence was the tree line ten feet from Plaintiffs' house.  **Id**. at 26-28.  They contend that the trial court's rejection of Mr. Zelenak's expert opinion was founded upon a misrepresentation of his testimony.  **Id**. at 29-32.  In particular, Plaintiffs claim that the trial court improperly considered the evidence of Mr. Zelenak's early efforts to settle the dispute without litigation by suggesting that the parties agree to a line and an easement, and then incorrectly imputed that conciliatory motive into Mr. Zelenak's subsequent gathering of parol evidence to formulate an expert opinion about the proper location of the property line. **Id**. at 28-30, 33-35.

Plaintiffs also assert that the trial court misstated Mr. Gornik's testimony when it opined that it was consistent with that of Russell about the property line being not the tree line itself, but somewhere between that line and the house.  They observe that, on the contrary, Mr. Gornik's testimony was that the line "was at the trees; not between, but at."  Plaintiffs' brief at 31 (quoting

---

[6] In making these alternative arguments, Plaintiffs observe that "this Court has previously determined that, even on appeal, a party may amend the pleadings when necessary to conform to the proper form of action as established by the evidence."  Plaintiffs' brief at 22 (cleaned up) (quoting **Moore v. Duran**, 687 A.2d 822, 827 (Pa.Super. 1996) (reviewing merits of appeal in absence of finding as to possession because we have the ability to amend pleadings to include an action in ejectment)).

N.T. Trial, 7/25/22, at 26). Further, Plaintiffs argue that the trial court improperly deemed a 1977 plan of the Wamplers' property ("the Glenn Plan") that was relied upon by Mr. Zelenak in reaching his opinion to be inadmissible hearsay. *Id*. at 28-29.

From our thorough examination of the certified record and the applicable law, we first agree with the trial court that subsection (b)(3) was not implicated by the facts of this case. Plaintiffs appear to believe that their deed was invalid because the description of their land contained therein, which was the same as that in their predecessors' deeds, did not comport with the intention of the parties at the time the original Wampler land was divided into two parcels. For this reason, they invoked Rule 1061(b)(3) to compel Defendants to execute and record new deeds that recognize the disputed area as part of their parcel.

However, a claim that a deed does not represent the parties' agreement does not render the deed invalid; rather, as the trial court properly recognized, it makes the deed subject to reformation based upon mutual mistake. *See Doman v. Brogan*, 592 A.2d 104, 111 (Pa.Super. 1991). As noted *supra*, equitable reformation is not a remedy available through a quiet title action. *See MacKubbin*, 198 A.2d at 857. Plaintiffs declined to amend their complaint to advance that position in place of a Rule 1061 claim, but instead successfully argued that the trial court's grant of that relief notwithstanding the lack of an amendment should be stricken.

Plaintiffs' complaint also asserted that they have title to the disputed area despite its lack of inclusion in their deed because they and their predecessors treated the additional land as their own despite the deeds' descriptions and Defendants represented that the tree line was the boundary. Plaintiffs accordingly asked the court to declare that they have title to the disputed area as a matter of law based upon adverse possession, consentable lines, or equitable estoppel. The trial court correctly ascertained that these allegations supported a quiet title action pursuant to subsection (b)(1).

Hence, the question of who was in fact in possession of the disputed area was of primary concern, as it impacted the court's jurisdiction. **See Siskos**, 790 A.2d at 1007-08 ("[P]ossession is a jurisdictional prerequisite for Rule 1061(b)(1). . . . A trial court cannot rule on an action to quiet title where the plaintiff requests it to compel a person claiming title to the land to bring an action in ejectment." (cleaned up)). Along these lines, this Court has observed:

> There is no precise definition of what constitutes possession of real property; the determination of possession is dependent upon the facts of each case, and to a large extent upon the character of the land in question. In general, however, actual possession of land means dominion over the property; it is not the equivalent of occupancy. Thus, the trial court must determine which party exercised dominion and control over the property before determining what is the proper form of action in such a case.

**Moore v. Duran**, 687 A.2d 822, 827 (Pa.Super. 1996) (cleaned up).

As noted, the trial court found that Plaintiffs did not establish possession over the disputed area. However, the trial court equated "disputed area" with

- 19 -

the area between the house and the tree line, not the area between the property line indicated in Plaintiffs' deed and the tree line. Yet, as Defendants admitted in their answer to the complaint and the trial evidence confirmed, Plaintiffs and their predecessors in title have been in possession of the land upon which the dwelling sits since the time the parcel was divided in 1958. *See*, *e.g.*, Answer, New Matter and Counterclaim, 8/17/20, at ¶ 31; N.T. Trial, 12/8/22, at 32. As such, the trial court's possession-based reason for wholly rejecting Plaintiffs' Rule 1061(b)(1) claim is not supported by the record.

Likewise, the record does not fully support the trial court's reasons for declining the substantive bases Plaintiffs advanced for subsection (b)(1) relief. To reiterate, the trial court found no possession of any portion of the disputed area by Plaintiffs or their predecessors for the twenty-one years necessary to establish adverse possession despite its acknowledgment that the deed places the boundary line through Plaintiffs' house, which was erected before the property was divided in 1958. *See* Order, 3/6/23, at ¶ 1(a) and (b).

The court also was admittedly confused about Mr. Zelenak's testimony. As a result, it inaccurately surmised that the surveyor "only used . . . parole [*sic*] evidence to attempt a resolution of the matter once it was clear that the boundary lines in Plaintiffs' deed did not close." *Id*. at ¶ 1(c). This is belied by the certified record, which reflects that Mr. Zelenak plainly stated that he proposed a compromise in an effort to save the parties from expense of the instant litigation **before** gathering parol and physical evidence that might

- 20 -

establish a different boundary line. **See** N.T. Trial, 7/25/22, at 162-63 (Mr. Zelenak explaining that he had not obtained the physical or parol evidence at the time he drafted Defendants' Exhibits X and Y, which were a proposed compromise deed and survey placing the boundary one foot from the dwelling). Mr. Zelenak's subsequent collection of evidence, including his discussion about the property line with Russell, his review of the Glenn Plan, and his location of monuments in the field, was not undertaken to inform an equitable solution, but to proffer an expert opinion on the true and correct location of the boundary, which was submitted as Plaintiffs' Exhibit 17.[7] **Id**. at 122-30.

The court likewise inaccurately described Mr. Gornik's testimony as being consistent with that of Russell's view of the location of the property line.

---

[7] We observe that the examination of other instruments referenced in deeds and collection of parol evidence are customary and appropriate surveying techniques. As our sister Court succinctly summarized through reference to this Court's decisions:

> Where maps are referred to in a conveyance, they are regarded as incorporated into the instrument and given considerable weight in determining the true description of the land. Testimony of experienced surveyors, especially those familiar with original monuments, is extremely valuable in establishing the location of boundary lines. Courses and distances must give way to monuments on the ground and parol evidence as to the existence of such monuments is admissible. Where land is described by courses and distances and also by calls to adjoiners, the latter must govern where there is a discrepancy.

***Com., Pennsylvania Game Comm'n v. Keown***, 471 A.2d 937, 939–40 (Pa.Cmwlth. 1984) (citations omitted).

Plaintiffs correctly assert that Mr. Gornik expressly rejected the notion that Executor or Russell placed the boundary between the trees and the house, testifying instead that the line "was at the trees; not between, but at." N.T. Trial, 7/25/22, at 26). **See also** N.T. Trial, 7/25/22, at 25 (indicating that Executor informed Mr. Gornik that the family was "under the impression that the pine trees represented the property line").

In light of these incomplete or unsupported factual findings, and instances of misapplication of the law, we are compelled to vacate the August 21, 2023 judgment, the June 6, 2023 order granting in part Plaintiffs' motion for post-trial relief, and the March 6, 2023 verdict.

Upon remand, the trial court shall initially ascertain how much of the disputed area Plaintiffs possess, and then reconsider their subsection (b)(1) quiet title claim to that area through an accurate view of the evidence. Any portion of the disputed area not possessed by Plaintiffs cannot be adjudicated by this quiet title action but must be pursued through an action in ejectment.[8] **See Siskos**, 790 A.2d at 1007-08.

---

[8] Of course, this further litigation would be obviated if the parties decide to do as both Mr. Zelenak and the trial court suggested and reach an agreement as to where the line should be. **See**, **e.g.**, N.T. Trial, 7/25/22, at 75-77 (the court encouraging the parties to resolve the matter themselves), 153 (Mr. Zelenak indicating that he prepared the 2017 compromise documents "so we [would] not [be] sitting here today"). Unfortunately, this Court is all too familiar with neighboring property owners' intransigence in situations such as this and will not be surprised to see further costly litigation and appeals before all is said and done.

Judgment and verdict vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 5/28/2024