J-S32043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| WILMINGTON SAVINGS FUND SOCIETY FSB | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PATRICIA ANN SUAREZ AND ROBERT SUAREZ, JR. | : | No. 3035 EDA 2023 |
| | : | |
| APPEAL OF: ROBERT SUAREZ JR. | : | |

Appeal from the Judgment Entered April 3, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 191002807

BEFORE: LAZARUS, P.J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED DECEMBER 3, 2024**

Appellant, Robert Suarez Jr., appeals from the judgment entered in the Philadelphia County Court of Common Pleas, in favor of Appellee, Wilmington Savings Fund Society FSB ("Bank"), in this mortgage foreclosure action. We affirm.

The relevant facts and procedural history of this appeal are as follows. On April 12, 2005, Appellant and his then-wife, Patricia Ann Saurez, obtained a mortgage in the amount of $100,000.00 on the residential property located at 11733 Waldemire Drive in Philadelphia. Bank is the current mortgagee. Appellant and Ms. Suarez defaulted on the mortgage by failing to make monthly payments beginning in 2012. Following the default, Appellant and Ms. Suarez divorced. Ms. Suarez died on October 21, 2013.

On May 14, 2015, Appellant and the executrix of Ms. Suarez's estate received notice of intention to foreclose, pursuant to the Loan Interest and Protection Law ("Act 6").[1,2] Appellant delayed foreclosure by filing for bankruptcy.[3] After the bankruptcy court entered its final order, Bank filed a mortgage foreclosure complaint against Appellant and Ms. Suarez on October 24, 2019. The court conducted a conciliation conference on March 12, 2020. At the conference, Bank's attorney learned about Appellant's divorce from Ms. Suarez and her subsequent death. (*See* Motion to Remove from Mortgage Foreclosure Diversion Program, filed 6/19/20, at ¶18). On August 18, 2020, Bank filed a suggestion of death. That same day, Bank filed a *praecipe* for substitution of defendant, pursuant to Pa.R.C.P. 2352. In the *praecipe*, Bank requested that Ms. Suarez be substituted with the executrix of her estate. On November 16, 2020, the court ordered the substitution of Ms. Suarez with the

_____

[1] 41 P.S. §§ 101-605.

[2] The notice was filed by attorneys on behalf of the Federal National Mortgage Association, which held the mortgage at that time. Thereafter, the mortgage was subject to a series of assignments. Ultimately, the mortgage was assigned to Bank, with the assignment recorded on May 6, 2019. (*See* Amended Complaint, filed 11/7/22, at ¶12).

[3] "[Appellant] filed for bankruptcy protection three (3) times in the United States Bankruptcy Court for the Eastern District of Pennsylvania following the issuance of the Notices: a Chapter 7 bankruptcy at 16-12223-mdc on March 13, 2016; a Chapter 13 bankruptcy at 17-14764-mdc on July 13, 2017; and a final Chapter 13 bankruptcy at 17-18261-mdc on December 7, 2017. The final relief Order, lifting the Automatic Stay to allow [Bank] to proceed with its foreclosure, was entered on August 28, 2019." (Bank's Response to Preliminary Objections, filed 12/19/22, at ¶17).

representative of her estate.

Bank filed a *praecipe* to reinstate the complaint on November 18, 2020. On October 20, 2022, Appellant filed preliminary objections. Bank responded with the filing of an amended complaint on November 7, 2022.[4] Appellant filed additional preliminary objections on November 28, 2022. On December 22, 2022, the court overruled Appellant's preliminary objections.

The case proceeded to a bench trial on October 26, 2023. At that time, Bank presented testimony from Bernie Castro, an employee for the current loan servicing company. Bank also introduced multiple exhibits, including the promissory note, mortgage agreement, proof of assignments, and Act 6 notice. (**See** Trial Exhibits, filed 10/27/23, at P1-P9, P15). On October 31, 2023, the court entered an *in rem* judgment in favor of Bank and against Appellant for $207,946.12, plus *per diem* interest at the statutory rate of six percent.

Appellant timely filed a post-trial motion on November 7, 2023. Among other things, Appellant argued that the original complaint was a legal nullity because Bank named a deceased individual as one of the defendants. (**See**

_____

[4] We note that the caption for the amended complaint lists Appellant and the executrix of Ms. Suarez's estate as the defendants. Nevertheless, Appellant's subsequent filings continued to utilize the caption from Bank's original complaint where Ms. Saurez was listed as a defendant. Appellant even utilized the older caption on his notice of appeal, which resulted in this Court docketing the matter with the caption from the original complaint. (**See** Notice of Appeal, filed 11/27/23).

Post-Trial Motion, filed 11/7/23, at ¶3). Appellant also argued that the Act 6 notice was inadequate because it was "sent by a different party four (4) years prior to [Bank's] filing suit…." (*Id.* at ¶6). Before the court ruled on the post-trial motion, however, Appellant filed a notice of appeal on November 27, 2023. On November 29, 2023, the court denied Appellant's post-trial motion. That same day, the court directed Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[5] Appellant timely filed his Rule 1925(b) statement on December 18, 2023.

On March 21, 2024, this Court entered a *per curiam* order acknowledging that Appellant had taken an appeal from the October 31, 2023 order entering judgment. "Because judgment was entered simultaneously with the trial court's decision following a non-jury trial and before the ten-day period for filing post-trial motions expired, that judgment is premature and, therefore, void." (Order, filed 3/21/24) (citing *Jenkins v. Robertson*, 277 A.3d 1196 (Pa.Super. 2022)). Thus, we directed Appellant "to *praecipe* the trial court Prothonotary to enter judgment on the decision of the trial court." (*Id.*) "Upon compliance with this Order, the notice of appeal previously filed in this case will be treated as filed after the entry of judgment." (*Id.*)

_____

[5] The Honorable Timika Lane presided over the trial, entered the judgment in favor of Bank, denied Appellant's post-trial motion, and ordered the filing of the Rule 1925(b) statement. Thereafter, Judge Lane was elected to this Court. Consequently, Judge Lane did not author the opinion in response to Appellant's Rule 1925(b) statement.

- 4 -

Appellant complied with this Court's order and filed a *praecipe* for the entry of judgment on April 3, 2024.

Appellant now raises three issues for this Court's review:

Whether the [trial court] erred in awarding judgment in [Bank's] favor where Bank did not satisfy all statutory notices required to proceed with the instant mortgage foreclosure action.

Whether the [trial court] erred in awarding judgment to [Bank] where [Bank's] suit was a nullity due to [Bank's] initiation of suit against a deceased individual who was a necessary party to the subject action.

Whether the [trial court] erred in failing to make factual findings and legal conclusions necessary to support the court order dated October 27, 2023.

(Appellant's Brief at 4).

The following principles govern our review of an appeal following a bench trial:

Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review, the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

*Stoley v. Wampler*, 317 A.3d 1007, 1015 (Pa.Super. 2024) (quoting *Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare*, 299 A.3d 937, 956 (Pa.Super. 2023)).

In his first issue, Appellant argues that Bank failed to provide adequate

Act 6 notice. Appellant relies on **JP Morgan Chase Bank N.A. v. Taggart**, 651 Pa. 98, 203 A.3d 187 (2019), for the proposition that "a mortgage assignee is required … to issue a new pre-foreclosure notice prior to initiating a foreclosure action and cannot recycle an assignor's stale notice issued in connection with a prior foreclosure action." (Appellant's Brief at 10). Appellant concedes that "the Act 6 notice at issue was not issued before a prior foreclosure action," but he insists that the notice "remains stale for the same reasons contemplated by the Pennsylvania Supreme Court in **Taggart**." (**Id.** at 11). Appellant emphasizes that the Act 6 notice: 1) was sent more than fifty-three (53) months prior to Bank's filing of the foreclosure complaint; 2) did not identify Bank as the mortgage holder; and 3) did not list the proper default amount. "In all, the staleness of the notice deprived Appellant of the opportunity to cure the default in advance of [Bank's] filing of the initial foreclosure action in violation of Act 6." (**Id.** at 12). Absent proper Act 6 notice, Appellant concludes that "the evidence of record was insufficient to allow the trial court to maintain jurisdiction over [Bank's] complaint." (**Id.** at 13). We disagree.

"Act 6 is a usury law, designed to protect borrowers against improper mortgage lending practices." **Taggart, supra** at 110, 203 A.3d at 194 (quoting **Roethlein v. Portnoff Law Associates, Ltd.**, 623 Pa. 1, 14, 81 A.3d 816, 824 (2013)). "In addition to regulating maximum lawful interest rates, Act 6 provides safeguards to residential borrowers before they face

foreclosure." *Id.* at 111, 203 A.3d at 194.

> The General Assembly has identified industry customs that it deems "particularly pernicious," one of which is the initiation of foreclosure with insufficient notice.  In order to remedy this problem, the lawmakers created specific notice requirements to ensure that borrowers are aware not only that they are considered to be in default, but also of the amount required to cure that default and the time within which they may do so.

*Id.* at 111, 203 A.3d at 194-95 (internal citation omitted).

The notice requirement of Act 6 provides:

### § 403.  Notice of intention to foreclose

**(a)**      Before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.

* * *

**(c)**      The written notice shall clearly and conspicuously state:

>    (1)    The particular obligation or real estate security interest;

>    (2)    The nature of the default claimed;

>    (3)    The right of the debtor to cure the default as provided in section 404 of this act and exactly what performance including what sum of money, if any, must be tendered to cure the default;

>    (4)    The time within which the debtor must cure the default;

> > (5) The method or methods by which the debtor's ownership or possession of the real estate may be terminated; and

> > (6) The right of the debtor, if any, to transfer the real estate to another person subject to the security interest or to refinance the obligation and of the transferee's right, if any, to cure the default.

41 P.S. § 403(a), (c).

> As the Superior Court explained in [**Wells Fargo Bank N.A. v. Spivak**, 104 A.3d 7, 14 (Pa.Super. 2014)], "Act 6 notice enables a financially troubled residential homeowner to learn exactly what sum of money is necessary to cure the mortgage default." This number does not remain static as time passes. To the contrary, compounding interest, late fees, and missed payments accrue steadily. The amount required to cure the default will depend as well upon whether the borrower has made any payments, changes in the escrow portion of the payments, and fluctuations in adjustable rate mortgages.

> In view of the statutory language, the occasion and necessity for Act 6, the mischief to be remedied, and the object to be attained, we conclude that Act 6 requires a new pre-foreclosure notice each time the lender initiates a mortgage foreclosure action. It is not sufficient for the lender to recycle a stale notice that preceded a prior action, regardless of how that action finally was resolved. Notice, and the thirty-day safe harbor period that follows, give the homeowner time to save [their] home by refinancing or transferring the home to another person who may cure the default.

**Taggart, supra** at 111-12, 203 A.3d at 195 (internal citation and footnote omitted).

Instantly, Bank did not "recycle" Act 6 notice that preceded a prior action. Regarding Appellant's argument about the staleness of the Act 6

notice, we emphasize that Appellant's bankruptcy filings precluded the various mortgagees from initiating a foreclosure action sooner. (*See* Bank's Response to Preliminary Objections at ¶17). The federal court lifted the bankruptcy stay on August 28, 2019, and Bank filed its original complaint shortly thereafter. We acknowledge that some information within the Act 6 notice, such as the amount necessary to cure the default, had changed by the time the federal court lifted the bankruptcy stay. Nevertheless, even our Supreme Court recognized that such information "does not remain static as time passes." *See Taggart, supra*.

Moreover, we agree with Bank's assertion that the Act 6 notice "clearly served [its] purpose in advising [Appellant] of the delinquency and the impending foreclosure, as he soon after exercised his right to address the delinquency through multiple bankruptcy filings." (Bank's Response to Preliminary Objections at ¶17). On this record, we conclude that Appellant received proper Act 6 notice before Bank initiated the current foreclosure action. *See Taggart, supra*; 41 P.S. § 403(a). Thus, the court did not commit an error of law by exercising jurisdiction over the matter, and Appellant is not entitled to relief on his first claim. *See Stoley, supra*.

In his second issue, Appellant reiterates that Bank's original complaint included a deceased individual, Ms. Suarez, as a defendant. Appellant insists that a dead person "cannot be a party to an action, and any such attempted proceeding is completely void and of no effect." (Appellant's Brief at 14)

(quoting ***Lange v. Burd***, 800 A.2d 336, 341 (Pa.Super. 2002), *appeal denied*, 572 Pa. 757, 818 A.2d 504 (2003)). Appellant maintains that Bank's only recourse was to file a new action naming Ms. Suarez's personal representative as a defendant. Appellant claims that Bank's "substitution of the representative of [Ms. Suarez's] estate is incapable of curing the procedural and jurisdictional defect that was [Bank's] initial filing against a deceased individual." (***Id.***) On this basis, Appellant concludes that this Court must reverse the judgment entered in favor of Bank. We disagree.

"A dead [person] cannot be a party to an action, and any such attempted proceeding is completely void and of no effect." ***Lange, supra*** at 341. Where a decedent is one of several parties, however, the suit is void only to that particular party. ***See, e.g., Valentin v. Cartegena***, 544 A.2d 1028, 1029 (Pa.Super. 1988) (affirming dismissal of only one of defendants, who died prior to suit being filed); ***Thompson v. Peck***, 320 Pa. 27, 181 A. 597 (1935) (finding entire suit void when original complaint only named one defendant, who was deceased).

Instantly, Bank's original complaint named both Ms. Suarez and Appellant as defendants. Because Bank included Appellant as a defendant in the original complaint, and because Appellant is still alive, there is no merit to Appellant's claim that the entire action is void. ***See id.*** Therefore, Appellant is not entitled to relief on his second issue.

In his final issue, Appellant relies on ***Puleo v. Thomas***, 624 A.2d 1075

(Pa.Super. 1993), for the proposition that a trial court's failure to issue detailed findings of fact may prevent this Court from conducting meaningful appellate review. Appellant emphasizes that, in this case, the trial court "issued a verbal decision from the bench, followed by a brief order dated the following day." (Appellant's Brief at 15). Appellant complains that the court did not issue formal findings of fact or conclusions of law.

> As a result, there are no factual findings with respect to key objections made by Appellant at the time of trial related to the above-referenced legal issues, as well as the authenticity of certain exhibits, namely the alleged original notice provided by [Bank], which appeared to be a photocopied version of the document.

(***Id.*** at 15-16). Appellant concludes that the trial court's decision not to issue written findings of fact or conclusions of law deprived this Court of the ability to conduct meaningful appellate review. We disagree.

Our Rules of Civil Procedure govern bench trials as follows:

**Rule 1038. Trial Without Jury**

(a) Except as otherwise provided in this rule, the trial of an action by a judge sitting without a jury shall be conducted as nearly as may be as a trial by jury is conducted and the parties shall have like rights and privileges, including the right to move for nonsuit.

(b) The decision of the trial judge may consist only of general findings as to all parties but shall dispose of all claims for relief. The trial judge **may** include as part of the decision specific findings of fact and conclusions of law with appropriate discussion.

(c) The decision may be made orally in open court at the end of the trial, and in that event shall be forthwith transcribed and filed in the office of the prothonotary, or it

- 11 -

may be made there-after in writing and filed forthwith. In either event the prothonotary shall notify all parties or their attorneys of the date of filing. The trial judge shall render a decision within seven days after the conclusion of the trial except in protracted cases or cases of extraordinary complexity.

Pa.R.C.P. 1038 (emphasis added).

Instantly, the trial court's decision not to issue formal findings of fact or conclusions of law has not hampered this Court's ability to conduct meaningful appellate review. Our review of the record reveals that this was a case where the court merely needed to issue general findings while disposing of Bank's claims for relief. *See* Pa.R.C.P. 1038(b). This is underscored by the opening statement from Bank's attorney, wherein he explained that the parties agreed about many of the facts at issue:

> After discussions with opposing counsel, I believe all of the underlying facts regarding the mortgage foreclosure are not in dispute. Those facts include the signatures of [Appellant] and Patricia Suarez appear on the notarized mortgage; that the mortgage has been in default since July 1st of 2012, with no payments made since July 1st of 2012. All assignments of the mortgage are accounted for. An Act 6 notice was sent to [Appellant] on May 14th of 2015.
>
> At the time that this complaint was filed in 2019, the defendant, Patricia Suarez, was deceased. The matter was heard in open court following the *praecipe* to substitute for the estate. By leave of court, [Bank] was permitted to substitute the defendant, Mary Tomassetti. And all of those underlying facts are not in dispute.
>
> *    *    *
>
> But this is a standard mortgage foreclosure action on the property. And at the end of [Bank's] case, we will [be] asking for a judgment in our favor for mortgage foreclosure.

- 12 -

(N.T. Trial, 10/26/23, at 5-6). Appellant's counsel agreed with this assessment. (*See id.* at 6). Thereafter, the evidence adduced at trial consisted of the testimony from the lone witness, Mr. Castro, as well as Bank's exhibits. Appellant did not cross-examine Mr. Castro or offer his own witnesses or exhibits. Instead, Appellant moved for nonsuit, which the court denied.

As the current trial jurist observed:

> While Judge Lane did not make specific findings on the record, it is implicit in her decision in favor of the bank that she found Mr. Castro's testimony credible with respect to the mortgage, and that the bank provided appropriate Act 6 notice. [Appellant] had an opportunity to present testimony and evidence, but did not do so.

(Trial Court Opinion, filed 5/7/24, at 4). We agree with this analysis, and we conclude that Appellant is not entitled to relief on his third issue. Accordingly, we affirm.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/3/2024