J-S04043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| GARY CASTRO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALTIERI CONTRACTING D/B/A | : | |
| ALTIERI CUSTOM CONTRACTING, | : | |
| DPA CONSULTING, LLC, AND DANIEL | : | No. 2439 EDA 2024 |
| ALTIERI | : | |
| | : | |
| Appellants | : | |

Appeal from the Judgment Entered April 29, 2024
In the Court of Common Pleas of Lehigh County
Civil Division at No(s):  2022-C-0458

BEFORE:  OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 5, 2025**

Altieri Contracting d/b/a Altieri Custom Contracting, DPA Consulting, LLC, and Daniel Altieri (collectively, "Appellants") appeal from the April 29, 2024 judgment[1] entered against them and in favor of Gary Castro ("Appellee").  On appeal, Appellants contend that the court erred in determining that they: (1) violated the Home Improvement Consumer

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] According to the docket, although Appellee filed a praecipe to enter the appealed-from judgment on April 26, 2024, the prothonotary sent Rule 236 notice of this judgment on April 29, 2024, the operative appeal date. ***See*** Pa.R.A.P. 108(b) ("The date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure shall be the date on which the clerk makes the notation in the docket that written notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b).").

Protection Act, 73 P.S. § 517.1, *et seq*. ("HICPA"); (2) violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1, *et seq*. ("UTPCPL"), and (3) engaged in negligent misrepresentation, all stemming from the planned contractual installation of an in-ground swimming pool for Appellee. After a thorough review of the record, we conclude that Appellants failed to prove that the court abused its discretion or committed an error of law. Accordingly, we affirm.

By way of background, Appellee, as a homeowner, entered into a contract on April 1, 2021, with Appellants. The contract called for the excavation and construction of an in-ground pool and fencing at a price of $42,000, and pursuant to the terms of the contract, Appellee provided a $27,300 deposit at its signing. However, no work was ever performed, and the deposit was never returned, leading to the present action against Appellants.

Approximately one year after Appellee filed his complaint,[2] which asserted, *inter alia*, breach of contract, unjust enrichment, and violations of HICPA and UTPCPL, the court granted, by order, partial summary judgment on March 7, 2023, in favor of Appellee and against Appellants, jointly and

_____

[2] In response, Appellants, *inter alia*, raised claims against Hydro Dynamic Pools, LLC, and Roger Kornfeind (collectively, "Additional Defendants," but referred to in the singular as "subcontractor," where appropriate), asserting that they, as the subcontractor tasked with completing the pool excavation and construction, and with whom Appellants had already sent at least some of Appellee's deposit money, were the liable parties.

severally, in the amount of $27,300, which was later clarified to be an adjudication of Appellee's breach of contract claim. *See* Decision, 12/13/23, at 1. That same order specifically left Appellee's requests for treble damages and attorneys' fees, derived from HICPA and UTPCPL claims, for trial. On April 6, 2023, Appellants attempted to appeal from the March 7, 2023 decision,[3] but the appeal was quashed as interlocutory.

Following a non-jury trial, the court, on December 13, 2023, rendered its verdict and entered judgment against Appellants and in favor of Appellee on Appellee's claims of HICPA and UTPCPL violations as well as negligent misrepresentation, amounting to an aggregate $91,900 judgment against Appellants. Appellants timely filed a post-trial motion, which was denied on April 17, 2024. Thereafter, on April 26, 2024, Appellee filed a praecipe to enter judgment on the December 13, 2023 decision, with a Rule 236 notice date of April 29, 2024. On May 14, 2024, Appellants attempted to appeal from this judgment. Nevertheless, we quashed the appeal because Appellants had outstanding claims against Additional Defendants.

On September 3, 2024, Appellee filed a praecipe to enter judgment against Bank of America, N.A., as garnishee and holder of several of Daniel Altieri's bank accounts. The following day, September 4, 2024, Appellants filed

---

[3] Appellee filed a praecipe to enter judgment on April 20, 2023, during the pendency of Appellants' initial appeal.

a praecipe to enter a default judgment against Additional Defendants,[4] with Rule 236 notice sent the following day, in effect providing final resolution to all claims against all parties.[5] On September 12, 2024, Appellants filed a notice of appeal, purportedly appealing from the April 17, 2024 order denying their post-trial motion.[6]

While there have been voluminous procedural irregularities present in this case, to perfect the instant appeal, Appellants filed their most-recent notice of appeal within thirty days of the default judgment entered against Additional Defendants. **See** Pa.R.A.P. 903(a) (requiring notice of appeal to be filed within thirty days after the entry of the appealed-from order). As "each

_____

[4] Additional Defendants have not filed a petition to open/strike this default judgment.

[5] Appellants were required to wait to file a notice of appeal until resolution of all claims that had been made against all parties, i.e., the issuance of a final order. **See** Pa.R.A.P. 341(a), (b)(1) (defining final order as one that disposes of all claims and of all parties); **see also Shearer v. Hafer**, 177 A.3d 850, 855 (Pa. 2018) (generally speaking, "an appellate court's jurisdiction extends only to review of final orders[]"). Stated differently, an order is final when it "ends the litigation, or alternatively disposes of the entire case." **Baumbach v. Lafayette Coll.**, 272 A.3d 83, 88 (Pa. Super. 2022) (citation omitted). Here, despite the court resolving in April 2024 all the counts contained in Appellee's complaint, because Appellants had asserted additional claims against Additional Defendants, those claims, too, required resolution for there to have been a final and appealable order. As noted, Appellants ultimately rectified this issue of finality by filing a praecipe to enter a default judgment against Additional Defendants on September 4, 2024, with the docket reflecting Rule 236 notice being given the following day.

[6] We note that an appeal properly lies from the entry of judgment following the disposition of any post-trial motions. **See Johnston the Florist, Inc. v. TEDCO Const. Corp.**, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*).

separate judgment becomes appealable when the suit is resolved against the final defendant[,]" ***Burkey v. CCX, Inc.***, 106 A.3d 736, 739 (Pa. Super. 2014) (citation omitted), this appeal, directly challenging an earlier judgment, is properly before this Court. ***See, e.g.***, ***Werner v. 1281 King Assocs., LLC***, 327 A.3d 291, 296 (Pa. Super. 2024) (establishing that filing of praecipe to dismiss last outstanding claim "served as a final disposition as to all claims and all parties and rendered [a previous] order sustaining [the appellees'] preliminary objection readily appealable and ripe for appellate review[]").

On appeal, Appellants present one issue for review:

Did the court commit reversible error when it found that Appellants violated the UTPCPL and committed negligent misrepresentation for failing to inform the Appellee that a third-party would install the pool, where the evidence presented at trial established that before the contract at issue was even signed, the Appellee was aware that the Appellants were soliciting estimates from third-party contractors, including the Additional Defendants?

***See*** Appellants' Brief, at 7.[7]

Although the precise thrust of their argument is not wholly clear, Appellants' main contention is that the evidence they presented at trial demonstrated that Appellee "was aware, even before the contract was signed, that the Appellants were soliciting estimates from third-party pool contractors, including [Additional Defendants]." ***Id***. at 12. Apparently, assuming this condition to be true, Appellee's knowledge and/or implicit acquiescence to the

---

[7] Appellants do not appear to contest the trial court's initial granting of partial summary judgment against them on the breach of contract claim.

use of a subcontractor would vitiate Appellants' HICPA and UTPCPL violations and further lead to the conclusion that the Appellants did not engage in negligent misrepresentation.

We utilize the following precepts in our review of an appeal following a non-jury trial:

> Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review, the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

**Stoley v. Wampler**, 317 A.3d 1007, 1015 (Pa. Super. 2024) (quoting **Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare**, 299 A.3d 937, 956 (Pa. Super. 2023)).

As stated above, the gravamen of Appellants' argument is that Appellee was fully apprised, or at least should have known, of Appellants' intention to utilize a subcontractor for the construction of the contracted in-ground pool. According to Appellants, this purported knowledge invalidates any HICPA or UTPCPL violation claim, as Appellants did not commit any deceptive acts, and also makes a finding of negligent misrepresentation impossible, given that Appellants did not, in fact, misrepresent their intended use of a subcontractor. In support of Appellants' averment is a pre-contract voicemail left by Appellants on Appellee's phone, which delves into the price of the pool, predicated on Appellee having already mentioned to Appellants a quoted price

that he received from another source: "We checked with six or seven different suppliers and it is looking like your price is really good for as far as the total goes." N.T. Non-Jury Trial, 8/8/23, at 39. The voicemail continues: "So[,] I want to check into that and I want to see how much of it is material and how much of it is labor because if it is blank, if I can buy the kit from them[, and based on] our labor costs[, we] might be able to save you some money." ***Id***. In response, Appellee sent a photograph of a previous estimate that he had received from Additional Defendants. ***See id***. at 41.

From this interaction, Appellants submit that "the only rational conclusion that may be drawn from the evidence is that not only would [Appellants] hire another company to build the pool, but it would likely retain [Additional Defendants] to perform the work because they provided the lowest estimate." Appellants' Brief, at 16. "Thus, [Appellee] cannot complain that when he later signed the contract and provided the deposit[,] he had no idea that a third-party would be involved in the project." ***Id***.

Despite this voicemail, the lower court, in essence, determined that its contents did not establish what Appellants have continued to argue: that Appellee assented to the work of a subcontractor for the pool's construction. Instead, it found that Appellants "never informed [Appellee], prior to entering the [c]ontract, that it intended to subcontract the pool work. Nor does the [c]ontract make any mention of any subcontractor, be it [Additional

Defendants] or otherwise." Decision, 12/13/23, at ¶ 13 (footnote omitted).[8]

As highlighted by the court, Appellants admittedly never had any intention of constructing the pool on Appellee's property. *See* N.T. Non-Jury Trial, 8/8/23, at 102, 105-06 (testimony establishing from contract inception that it was always Appellants' intent that Additional Defendants would build pool as subcontractor).

The court found that the at-issue contract violated HICPA in multiple ways. *See* Decision, 12/13/23, at ¶¶ 3-4 (finding, for example, violation of 73 P.S. § 517.9(8)(ii) because Appellants accepted "work that [they] did not intend to perform because [Appellants] had no intention of performing the pool installation itself, and instead subcontracted with [Additional Defendants] without disclosing such subcontract to [Appellee][]"). Appellants do not challenge any discrete HICPA violation findings.

The court also went into great detail to ascertain Appellants' UTPCPL violations and from those violations, the relief due to Appellee. *See id*. at 5-23 (determining that: (1) HICPA violations are also violations of UTPCPL, *see* 73 P.S. § 517.10; (2) Appellants engaged in "deceptive and misleading conduct in failing to inform [Appellee]" about Additional Defendants' role as

_____

[8] When asked if Appellants told Appellee that the pool would be contracted to Additional Defendants, Appellee responded with "[n]ever." N.T. Non-Jury Trial, 8/8/23, at 17. Appellee stated further that he would not have agreed to any kind of subcontracting work because, *inter alia*, he did not want to give money "to someone to make money on top of [his] money when [he could] hire directly that company to do the work for [him]." *Id*.

subcontractor; (3) Appellee justifiably relied on the contract; and (4) Appellee suffered an "ascertainable loss" of his deposit money, which was thereafter augmented under the UTPCPL to account for attorneys' fees and deterrence/consumer protection). Much like the HICPA violations, Appellants do not point to any specific provision of the UTPCPL, or violations found thereunder, to demonstrate an incorrect ruling made by the court.

The court finally determined that Appellants engaged in negligent misrepresentation when, despite knowing that they would be utilizing a subcontractor to perform the construction of the pool, Appellants "failed to inform [Appellee] that the pool part of the project was to be contracted to and performed by [Additional Defendants][.]" Decision, 12/13/23, at ¶ 31. The court specifically found that: (1) Appellants neglected to mention, in the contract or otherwise, the use of Additional Defendants as a subcontractor; (2) Appellants insisted on receiving an unlawfully excessive deposit that it never returned; (3) Appellants knew of Appellee's prior bad experience with Additional Defendants;[9] and (4) Appellants' deceptive conduct, leading to the failure of the entire pool project, caused harm to Appellee, with Daniel Altieri, through his actions and position as manager, being personally liable for such conduct. **See id**. at ¶ 35. Other than Appellants' broad claim that Appellee knew that Appellants engaged Additional Defendants as a subcontractor for

---

[9] The court determined that Appellee had mentioned to Appellants that there had been a previously cancelled pool contract between Appellee and Additional Defendants. **See** Decision, 12/13/23, at ¶¶ 3-4, 9.

the purposes of pool construction, Appellants have not challenged whether Appellee failed to meet any particular element of negligent misrepresentation. *See generally Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994) (outlining four elements of negligent misrepresentation).

Essentially, the sole challenge in this appeal is limited to whether the voicemail provides indicia that Appellants informed Appellee of their intention to utilize a subcontractor to construct the pool. The court found that the voicemail only establishes that Appellants were "considering purchasing a pool kit and [attempting to] sav[e Appellee] some money with [Appellants'] labor costs." Decision, 12/13/23, at ¶ 32.

Considering the evidence in a light most favorable to Appellee as verdict winner, we agree with the court's assessment of the voicemail. Even an expansive construal of the voicemail's contents does not provide for the intended existence of a subcontractor. Instead, the voicemail merely refers to "suppliers" of the constituent parts of the pool's construction and specifically identifies the potential use of Appellants' own labor, without any indication of any additional labor sources. Despite their emphasis on the word, Appellants have pointed to no authority establishing that "supplier" can be interpreted as subcontractor. Conversely, the contract unequivocally delineates the relationship between Appellants, as the contractor of the pool, and Appellee, as the homeowner intending the construction of a pool; the contract is unambiguous insofar as it does not contemplate the utilization of third-party work. *See* Complaint, Exhibit A (the contract between the "contractor" and

- 10 -

"homeowner" for the construction of, *inter alia*, "the complete pool"). With the court rejecting Appellants' assertion that Appellee acquiesced to the use of a subcontractor, notwithstanding there having been no provision in the contract providing for that possibility, we conclude that the court's findings of facts were supported by the record and that it did not commit any errors of law. ***See Stoley***, ***supra***. Consequently, we affirm the judgment entered in Appellee's favor and against Appellants.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/5/2025