J-A26037-24                    2025 PA Super 80

| | | |
|---|---|---|
| ROBERT P. MILLER AND KENT S. ROCKWELL | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ROBERT M. BUNTING AND PAULINE BUNTING, HIS WIFE, AND DOLLAR BANK, FEDERAL SAVINGS BANK, AND GEORGE N. HARHAI AND JOYCE A. HARHAI, HIS WIFE, AND CITIZENS BANK N.A. | : | No. 351 WDA 2024 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ROBERT AND PAULINE BUNTING | : | |
| | : | |

Appeal from the Order Entered February 28, 2024
In the Court of Common Pleas of Westmoreland County
Civil Division at No. 4561 of 2020

BEFORE:  BOWES, J., BECK, J., and BENDER, P.J.E.

OPINION BY BENDER, P.J.E.:                    **FILED: April 8, 2025**

Robert M. Bunting and Pauline Bunting ("Appellants") appeal from the order entered on February 28, 2024, in the Court of Common Pleas of Westmoreland County, denying their motion for summary judgment and granting the motion for summary judgment filed by Robert P. Miller and Kent S. Rockwell ("Appellees") in this declaratory judgment and quiet title action.[1] We affirm.

---

[1] Appellants' notice of appeal purports to appeal from "the order entered in this matter on the 27th day of March, 2024." Notice of Appeal, 3/25/24, at 1. Additionally, the notice indicates that a copy of the order from which Appellants appeal is attached as "Exhibit A," as well as a copy of the docket

*(Footnote Continued Next Page)*

## I.  Background

The instant matter arises out of a dispute over the ownership of coal rights underlying approximately 14.10 acres of surface property owned by Appellants in Donegal Township, and identified by Westmoreland County Tax Assessment Office as parcel number 46-015-00-0-015 (the "Bunting Property").  Trial Court Order ("TCO I"), 2/28/24, at 1.  The Bunting Property was previously owned by Appellees, who claim to have deeded only the surface property to Appellants.  After learning that Appellants had entered into a coal mining lease on the Bunting Property with LCT Energy, LP ("LCT"), **see id.** (noting that said mining operations are now complete), Appellees initiated the underlying action with the filing of a "Complaint to Quiet Title and for Declaratory Judgment" against Appellants; Dollar Bank, Federal Savings Bank ("Dollar Bank")[2]; George N. Harhai and Joyce A. Harhai, his wife (collectively

_____

reflecting entry of the order, labeled as "Exhibit B."  **Id.**  However, the order attached to Appellants' notice of appeal is dated February 27, 2024, and was filed with the prothonotary's office on February 28, 2024.  **See id.**, Exhibit A.  Moreover, the docket attached to the notice of appeal reflects the entry of the February 27, 2024 order on February 28, 2024.  **See id.**, Exhibit B.  There is no docket entry for an order entered on March 27, 2024.  **See id.**  Hence, we presume that the reference in Appellants' notice of appeal to an order entered on "the 27th day of March, 2024[,]" is a typographical error, and we deem this to be an appeal from the order entered on February 28, 2024.  We have adjusted the caption accordingly.

[2] Dollar Bank is the record mortgage holder against Appellants' ownership in the Bunting Property.  TCO I at 1.  No appellate brief has been filed by Dollar Bank in this appeal.

"Harhai Defendants"); and Citizens Bank, N.A. ("Citizens Bank"). Complaint, 12/28/20, at 1-2.[3]

In their complaint, Appellees averred that they "are the owners of the coal, together with broad form mining rights, underlying the Bunting … Property … [('Appellees'] Coal Property')." *Id.* at ¶ 11. They sought to quiet title, in accordance with Pa.R.Civ.P. 1061, *et seq*., and a declaratory judgment under the Declaratory Judgment Act, 42 Pa.C.S. §§ 7531-7541, regarding their ownership of said property. *Id.* at ¶ 12. Appellees explained that they originally acquired the property by two distinct chains of title — one for the surface property and the other for the underlying coal rights. *Id.* at ¶¶ 16, 25. More specifically, they averred:

**Surface Property.**

16. [Appellees] acquired the surface rights to the Bunting … Property … as part of a larger tract of 146 acres of surface lands, as shown by the following title abstract and history of conveyances.

17. Hayes E. Gearhart and Anna Gearhart, his wife[ (collectively "the Gearharts")], owned the approximately 146 acres of real property in Fayette County, Pennsylvania[,] and Westmoreland County, Pennsylvania. Pennsylvania law presumes that they owned such property as joint tenants by the entireties.

---

[3] The complaint consisted of two counts: Count I (Appellees v. Appellants and Dollar Bank); and Count II (Appellees v. Harhai Defendants and Citizens Bank). **See** Complaint at 8, 15. Count II involved a similar dispute over the ownership of coal rights underlying a separate parcel of land owned by the Harhai Defendants and identified by the Westmoreland Tax Assessment Office as parcel number 46-015-00-0-005. **See id.** at ¶ 10. Appellees have settled with the Harhai Defendants and Citizens Bank; thus, only Count I remains pending in this matter. TCO I at 2.

- 3 -

18.     [The Gearharts] conveyed the surface of their 146 acres of real property to Michael Miscove and Veronica Miscove, his wife[ (collectively "the Miscoves")], by deed dated September 17, 1949. The Westmoreland County portion of … said 146 acres of surface property was recorded in Westmoreland County on October 4, 1949[,] at Deed Book Volume 1376, page 1 ("Gearhart Surface Deed").  A true and correct copy of the Gearhart Surface Deed is attached hereto as Exhibit A.

19.     By the Gearhart Surface Deed, … [the Gearharts, as the grantors,] excepted and reserved unto themselves all the coal and related mining rights in and underlying said 146 acres of surface property conveyed to [the Miscoves].

20.     [The Gearharts] granted a quit claim deed for the surface of their 146 acres of real property to [the Miscoves] by deed dated April 26, 1950.  The Westmoreland County portion of … said 146 acres of surface property was recorded in Westmoreland County on April 27, 1950[,] at Deed Book Volume 1380, page 582 ("Gearhart Quitclaim Deed").  A true and correct copy of the Gearhart Quitclaim Deed is attached hereto as Exhibit B.

21.     The purpose of the Gearhart Quitclaim Deed was to make clear that although [the Gearharts] had excepted and reserved the coal underlying the 146 acres they had conveyed to [the Miscoves], [the Gearharts] did not reserve (i) any surface rights or privileges, (ii) the right to enter upon the surface, or (iii) the right to mine said coal by the "stripping method[."]

22.     [The Miscoves] conveyed the 146 acres of surface property they received by the Gearhart Surface Deed and the Gearhart Quitclaim Deed to J. Donald Siesky and LaVioda Siesky, his wife[ (collectively "the Sieskys"),] by deed dated April 25, 1950 ("Miscove Surface Deed").  The Westmoreland County portion of the 146 acres of surface property was recorded in Westmoreland County on April 27, 1950[,] at Deed Book Volume 1371, page 4. A true and correct copy of the Miscove Surface Deed is attached hereto as Exhibit C.

23.     [The Sieskys] conveyed the 146 acres of surface property they received by the Miscove Surface Deed to [Appellees] by deed dated July 25, 1972 ("Siesky Surface Deed").  The Westmoreland County portion of the 146 acres of surface property was recorded in Westmoreland County on August [1], 1972[,] at Deed Book Volume 2102, page 1170.  A true and correct copy of the Siesky Surface Deed is attached hereto as Exhibit D.

24. By the conveyances pleaded above in paragraphs 18-23, … [Appellees] acquired a fee simple absolute title in the 146 acres of surface property from which they later conveyed the Bunting … Property … (as more fully explained below).

**Coal Property.**

25. [Appellees] acquired fee simple absolute title to the coal and related mining rights underlying the entire 146 acres of surface property they received by the Siesky Surface Deed, including the coal and mining rights underlying the Bunting … Property[,] … by a separate and distinct line of coal property conveyances, described below.

26. [The Gearharts] excepted and reserved all coal and mining rights underlying the 146 acres of surface that they conveyed to the Miscoves by the Gearhart Surface Deed….

27. Anna Gearhart died on October 1, 1953, survived by her husband[,] Hayes Gearhart….

28. Hayes Gearhart died testate on July 4, 1963. By his Last Will and Testament dated July 20, 1961, Hayes Gearhart left all his right, title and interest in and to the coal and mining rights underlying the 146 acres of surface that he and his wife had conveyed to the Miscoves by the Gearhart Surface Deed…, to Hayes Gearhart's six daughters, Matilda Hunter, Opal Wilcox, Marie Hunter, Mildred Sipe, Irene Bowman[,] and Vernace Newill….

29. In 1975, [Appellees] acquired from Hayes Gearhart's six daughters, the coal and mining rights underlying the 146 acres of surface lands by four deeds ("Coal Deeds") that [the Gearharts] had excepted and reserved from the Gearhart Surface Deed. The deeds for the Westmoreland County portion of … said 146 acres of coal and mining rights underlying … said 146 acres of surface lands [Appellees] acquired by the Siesky Surface Deed are recorded in Westmoreland County, Pennsylvania, and summarized in the table below.

| Date | Grantee | Grantor(s) | Date Recorded | Westmoreland County Deed Book Volume and Page No. |
|---|---|---|---|---|
| June 16, 1975 | [Appellees] | Matilda Hunter | July 28, 1975 | 2187/408 |

| | | | | |
|---|---|---|---|---|
| June 18, 1975 | [Appellees] | Opal Wilcox and Clyde Wilcox (her husband) | July 28, 1975 | 2187/411 |
| July 10, 1975 | [Appellees] | Marie Hunter | July 28, 1975 | 2187/414 |
| July 21, 1975 | [Appellees] | Mildred Sipe and Hays Sipe (her husband), Irene Bowman, and Vernace Newill | July 28, 1975 | 2187/417 |

True and Correct copies of the Coal Deeds are attached hereto as Exhibits E-1, E-2, E-3, and E-4.

30. By the conveyances described above in paragraph 25 (*i.e.*, the Coal Deeds), [Appellees] acquired a fee simple absolute title in the coal and related mining rights underlying the 146 acres of surface property they acquired by the Siesky Surface Deed, including the coal and related mining rights underlying the Bunting … Property….

31. According to well settled Pennsylvania law, [Appellees'] Coal Property that they acquired by the Coal Deeds is a separate estate in land, separate and distinct from the 146[-]acre surface estate that [Appellees] acquired by the Siesky Surface Deed.

*Id.* at ¶¶ 16-31.

In Count I of their complaint, Appellees claimed they conveyed approximately 14.10 acres of **surface** property — a portion of the 146 acres that they acquired via the Siesky Surface Deed — to Appellants by deed dated July 19, 1984 ("the Miller/Rockwell Deed"), and recorded on June 26, 1984, in Westmoreland County at Deed Book Volume 2557, page 402. *Id.* at ¶¶ 33, 34. *See also id.* at Exhibit F (Miller/Rockwell Deed). They explained that the Miller/Rockwell Deed "recites the Siesky Surface Deed as the source of [Appellees'] title[,]" *id.* at ¶ 36, advancing that "[t]he Sieskys did not own any coal under the 146 acres they acquired by the Miscove Surface Deed and thus [the Sieskys] did not convey (and could not have conveyed) any coal to

[Appellees]." *Id.* at ¶ 38. Likewise, Appellees claimed they "did not convey (nor could they have conveyed) any portion of the coal under the Bunting … Property to [Appellants]…." *Id.* at ¶ 40. *See also id.* at ¶ 41 ("The Miller/Rockwell Deed conspicuously omits any mention of a conveyance of coal and conspicuously omits a recital of the Coal Deeds.") (emphasis omitted). Appellees surmised that, "[a]s a result of the recital of the Siesky Surface Deed as [Appellees'] source of title, and the conspicuous omission of a recital of the Coal Deeds, [Appellants] were placed on notice that the Miller/Rockwell Deed did **not include** a conveyance of **coal** under the Bunting … Property." *Id.* at ¶ 42 (emphasis in original).

Moreover, Appellees averred that the Miller/Rockwell Deed includes the notices required by Section 1406.14 of the Bituminous Mine Subsidence and Land Conveyance Act, 52 P.S. §§ 1406.1–1406.21, and Section 1551 of the Conveyance Document Notice of Coal or Surface Support Severance Law, 52 P.S. §§ 1551-1554.[4] Complaint at ¶¶ 43, 46, 50. With regard to the Section 1406.14 notice, Appellees explained:

> The Bituminous Mine Subsidence [and Land Conveyance] Act … requires every deed in the Commonwealth of Pennsylvania pertaining to an interest in real property situated in a Pennsylvania county in which bituminous coal has been found and separately assessed for taxation to include a notice signed by the grantees acknowledging that the grantees **may not be receiving title to the coal.**

---

[4] The notices included in the Miller/Rockwell Deed, pursuant to 52 P.S. §§ 1406.14 and 1551, are referred to collectively herein as the "coal notices."

- 7 -

*Id.* at ¶ 43 (emphasis added). ***See also id.*** at ¶ 45 (noting that "[c]oal is found and routinely[,] separately assessed for taxation in Westmoreland County"); *id.* at ¶ 47 (emphasizing that Appellants signed said notice).

Similarly, the Section 1551 notice provided:

> **This document may not sell, convey, transfer, include or insure the title to the coal and right of support underneath the surface land described or referred to herein**, and the owner or owners of such coal may have the complete legal right to remove all of such coal and, in that connection, damage may result to the surface of the land and any house, building or other structure on or in such land. The inclusion of this notice does not enlarge, restrict or modify any legal rights or estates otherwise created, transferred, excepted or reserved by this instrument.

*Id.* at ¶ 50 (quoting *Id.*, Exhibit F at 3) (emphasis added). Consequently, Appellees asserted that Appellants took title to the Bunting Property subject to the coal notices and, therefore, they knew that the Miller/Rockwell Deed did **not include** a conveyance of **coal**. *Id.* at ¶¶ 48, 51, 52.

Appellees further contended that the doctrine of merger of estates is inapplicable in this matter and, therefore, Appellants cannot claim that Appellees' fee simple title in the surface property and their fee simple title in the underlying coal had merged prior to the execution of the Miller/Rockwell Deed. *Id.* at ¶¶ 53-55. ***See also id.*** at ¶ 54 ("Pennsylvania has never applied the doctrine of merger to distinct fee simple estates such as [Appellees'] fee estate in the 146 acres [of] surface property they acquired by the Siesky Surface Deed and the fee estate in the coal underlying … said 146 acres of surface lands they separately acquired by the Coal Deeds.").

Hence, Appellees averred:

60.    [Appellants] own no interest in the coal underlying the Bunting … Property.

***

62.    [Appellants] informed LCT that they own the coal under the Bunting … Property.

63.    [Appellees] and [Appellants] each entered into a lease with LCT for that portion of [Appellees'] Coal Property that underlies the Bunting … Property, and [Appellants] and [Appellees] also entered into an escrow agreement with LCT[,] authorizing LCT to mine the portion of [Appellees'] Coal Property underlying the Bunting … Property and escrow the royalty due on such coal until title to such coal is resolved.

64.    [Appellees] have been damaged by the unavailability of the royalty that LCT has paid into and held in escrow.

*Id.* at ¶¶ 60-64.   Wherefore, Appellees sought the entry of an order: (a) declaring that they are the exclusive owners of the coal underlying the Bunting Surface Property, *i.e.*, Appellees' Coal Property; and (b) barring Appellants from asserting "any right, lien, title, or interest underlying the Bunting Surface Property." *Id.* at 15.

Appellants filed an answer and new matter, in which they averred, *inter alia*, that the Miller/Rockwell Deed conveyed "any and all estates in the property **including** the surface interests and the **coal and mineral interests**…." Answer, 3/29/21, at ¶ 17 (emphasis added).   In support of this contention, Appellants averred that, at the time of the Miller/Rockwell Deed conveyance, Appellees "had a surface interest and a coal and mineral interest in the subject property[,]" *id.* at ¶ 15, and they "did not include an exception in reservation of any coal interest in the [Miller/Rockwell] Deed." *Id.* at ¶ 14.

- 9 -

Appellants further pointed to the "Together Clause" in the Miller/Rockwell Deed, which provides:

> TOGETHER with all and singular, the said property, improvements, ways, waters, water courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in anywise appertaining, and the reversions and remainders, rents, issues and profits thereof and all the estate, right, title interest, property, claim and demand whatsoever, of the said parties of the first part, in law, equity or otherwise howsoever of, in and to the same and every part thereof.

*Id.* at ¶ 16. *See also id.* (referencing 21 P.S. § 3 in support of their conclusion that the Miller/Rockwell Deed conveyed to Appellants "any and all estates in the property **including** the surface interests and the **coal and mineral interests**") (emphasis added).[5]

Both parties subsequently filed motions for summary judgment. Essentially, Appellees argued that their ownership of the coal and mining rights underlying the Bunting Property is "indisputable," and "the operative deeds in question raise no genuine material question of fact requiring a

_____

[5] Pursuant to 21 P.S. § 3:

> All deeds or instruments in writing for conveying or releasing land hereafter executed, granting or conveying lands, unless an exception or reservation be made therein, shall be construed to include all the estate, right, title, interest, property, claim, and demand whatsoever, of the grantor or grantors, in law, equity, or otherwise howsoever, of, in, and to the same, and every part thereof, together with all and singular the improvements, ways, waters, watercourses, rights, liberties, privileges, hereditaments, and appurtenances whatsoever thereto belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof.

*Id.*

- 10 -

trial[;]" thus, they are entitled to summary judgment quieting title to this property interest. Appellees' Motion for Summary Judgment, 4/11/23, at 1 (unnumbered); **see also** TCO I at 1.

To the contrary, Appellants asserted they are "the rightful owners of the mineral rights at issue." Appellants' Motion for Summary Judgment, 9/18/23, at ¶ 6. They argued that the Miller/Rockwell Deed clearly conveyed "**all** right, title, and interest in the property at issue that was previously possessed by [Appellees]." **Id.** at ¶ 23 (emphasis added). **See also id.** at ¶ 11 ("In July of 1972[, Appellees] acquired the surface rights in the property at issue."); **id.** at ¶ 12 ("[F]rom June 16, 1975, to July 21, 1975, [Appellees] acquired the mineral rights to the property at issue."); **id.** at ¶ 25 (stating that the Miller/Rockwell Deed did not except and reserve any interest in said property). Appellants also averred that Appellees' interest in the mineral rights is "nonexistent subsequent to [their] conveyance of said property to [Appellants] … [and, t]herefore, [Appellees] are unable to sustain an action to quiet title with regard to the property at issue." **Id.** at ¶¶ 31-32.

A hearing was held on the parties' cross-motions for summary judgment on November 29, 2023. Upon consideration of both parties' motions for summary judgment and supporting briefs, as well as each party's response to the opposing party's motion and oral argument presented by counsel, the trial court entered an order granting Appellees' motion for summary judgment and denying Appellants' motion for summary judgment. TCO I at 1. The reasons

for its decision are set forth in the trial court's February 28, 2024 order and discussed *infra*.

On March 25, 2024, Appellants filed a timely notice of appeal, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed a Rule 1925(a) opinion on May 16, 2024, in which it expanded on the reasoning in its February 28, 2024 order. Appellants present the following issues for our review:

1. Did the trial court err as a matter of law in determining that … Appellees satisfied the necessary elements required to sustain an action for declaratory judgment against … Appellants, … pursuant to 42 Pa.C.S. §[]7533[,] when it granted summary judgment?

2. Did the trial court err as a matter of law in finding that … Appellees satisfied the necessary elements required in order to sustain an action in quiet title against … Appellants, … pursuant to Pa.R.C[iv.]P. 1061(a)(2)?

Appellants' Brief at 4 (unnecessary capitalization omitted).

## II. Discussion

As this case involves competing summary judgment motions, we recognize:

> "Our scope of review of an order granting summary judgment is plenary." ***Harber Philadelphia Center City Office Ltd. v. LPCI Ltd. Partnership***, 764 A.2d 1100, 1103 (Pa. Super. 2000), *appeal denied*, … 782 A.2d 546 ([Pa.] 2001). "We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact." ***Id.*** "We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter

of law will summary judgment be entered." *Caro v. Glah*, 867 A.2d 531, 533 (Pa. Super. 2004)….

*National Cas. Co. v. Kinney*, 90 A.3d 747, 752 (Pa. Super. 2014). We will disturb the trial court's order only upon an error of law or an abuse of discretion. *Id.* at 753.

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused.

*Id.* (quoting *Lineberger v. Wyeth*, 894 A.2d 141, 145-46 (Pa. Super. 2006) (internal citations and brackets omitted)).

A. Declaratory Judgment

Appellants' first issue challenges the trial court's granting of summary judgment in favor of Appellees regarding Appellees' request for declaratory judgment pursuant to Section 7533 of the Declaratory Judgment Act.[6] "[T]he purpose of the Declaratory Judgment Act … is to afford relief from uncertainty and insecurity with respect to legal rights, status and other relations." *Juban v. Schermer*, 751 A.2d 1190, 1193 (Pa. Super. 2000) (citation omitted).

> Under the Declaratory Judgment Act, the trial court is empowered to declare the rights and obligations of the parties involved. [*Juban*, 751 at 1193.] "Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law." *Keystone Spray Equipment, Inc. v. Regis Insurance Co.*, 767 A.2d 572, 574 (Pa. Super. 2001). We may not substitute our

---

[6] Pursuant to Section 7533, "[a]ny person interested under a deed … may have determined any question of construction or validity arising under the instrument … and obtain a declaration of rights, status, or other legal relations thereunder." 42 Pa.C.S. § 7533.

judgment for that of the trial court if the court's determination is supported by the evidence. **Adams v. Adams**, 725 A.2d 824 (Pa. Super. 1999).

**Robson v. EMC Ins. Companies**, 785 A.2d 507, 509 (Pa. Super. 2001).

Additionally, we review the merits of Appellants' claim cognizant of the following, relevant legal principles:

Pennsylvania recognizes three discrete estates in land: the surface estate, the mineral estate, and the right to subjacent (surface) support. **Hetrick v. Apollo Gas Co.**, … 608 A.2d 1074, 1077 ([Pa. Super.] 1992). Because these estates are severable, different owners may hold title to separate and distinct estates in the same land. **Id.** "Where there is a separation of the minerals from the surface, the owner of the mineral estate owes a servitude of sufficient support to the superincumbent estate." **Smith v. Glen Alden Coal Co.**, … 32 A.2d 227, 235 ([Pa. Super.] 1943). However, this servitude of subjacent support is a separate estate in land, and is sometimes referred to as the "third" estate. **Id.**

**Pennsylvania Services Corp. v. Texas Eastern Transmission, LP**, 98 A.3d 624, 629-30 (Pa. Super. 2014).

Instantly, Appellees sought a declaratory judgment regarding their rights to the coal underneath the Bunting Property, *i.e.*, Appellees' Coal Property. **See** Complaint at 15. The trial court awarded summary judgment in favor of Appellees and issued an order declaring, *inter alia*, that Appellees are the exclusive owners of said mineral estate. TCO I at 6. In support of its decision, the trial court opined:

[T]he relevant history of the property begins with a deed dated September 17, 1949, which severed the coal estate from the surface estate, conveying only the surface estate in the Property from [the Gearharts] to [the Miscoves]. The surface estate was deeded to [the Sieskys] on April 25, 1950, and from the Seiskys [*sic*] to [Appellees] on July 25, 1972. From June 16, 1975[,] to July 21, 1975, [Appellees] acquired the coal rights to the Property

- 14 -

by four separate deeds from the Gearhart heirs. The 1972 Seisky [*sic*] [Surface D]eed contains the following description of the Property, explicitly describing it as the surface estate:

> EXCEPTING AND RESERVING from the above-described tract of land all coal in and under said tract, together with the right to mine and remove all said coal, without reservations, substitutions or liability for subadjacent support or injury or damage to the overlaying strata or surface or anything therein or thereon by reason of such a mining or removal, with such rights, privileges and rights of way necessary or convenient for the mining, removing or transporting of the same, and with the free and uninterrupted right and privilege of mining, removing and transporting through said premises coal from adjacent or other tracts of land.

[Appellees'] Motion[ for Summary Judgment], Exhibit D. The [Miller/Rockwell D]eed … is dated July 19, 1984, and it conveys property from [Appellees] to [Appellants] in consideration of the amount of $16,000.00. [***Id.***], Exhibit F. The property is described as:

> BEING a portion of the property conveyed to Robert P. Miller and S. Kent Rockwell, by deed of J. Donald Siesky et ux., dated July 21, 1972[,] and recorded in the Recorder's Office of Westmoreland County, Pennsylvania on August 1, 1972[,] in Deed Book Vol[.] 2102, at page 1170.

***Id.*** [at 2.] The deed goes on to read:

> TOGETHER with all and singular, the said property, improvements, ways, waters, water courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in anywise appertaining, and the reversions and remainders, rents, issues and profits thereof and all the estate, right, title interest, property, claim and demand whatsoever, of the said parties of the first part, in law, equity or otherwise howsoever of, in and to the same and every part thereof.
>
> TO HAVE AND TO HOLD the same piece, parcel or tract of land, together with the hereditaments and premises hereby granted or mentioned, and intended so to be, with the appurtenances, unto the said parties of the second part, their heirs and assigns, to and for the only proper use and

- 15 -

behoof of the said parties of the second part, their heirs and assigns forever.

＊＊＊

THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL, AND, IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT.

*Id.* [at 3.]

*Id.* at 3-5 (cleaned up). The trial court concluded: "Looking to the face of the [Miller/Rockwell D]eed, there is no question that it did **not** convey to [Appellants] the mineral estate to the property." *Id.* at 6 (emphasis added).

Appellants contend that the trial court's granting of summary judgment in favor of Appellees was inappropriate. Appellants' Brief at 13. In short, they argue that the trial court erred in determining: the intent of the parties with respect to the Miller/Rockwell Deed; that certain portions of the Miller/Rockwell Deed gave notice of Appellees' intention to except and reserve the mineral interest in said property; that the doctrine of merger did not result in the merger of the surface and mineral estates at issue; and that no genuine issue of material fact existed. *Id.* at 8-10. For the following reasons, we discern that no relief is due on this claim.

*1. Intent of the Parties*

- 16 -

We review the merits of Appellants' claim that the trial court erred in determining the parties' intent with respect to the Miller/Rockwell Deed, mindful of the following:

When construing a deed,

> [a] court's primary object must be to ascertain and effectuate what the parties themselves intended. **Mackall v. Fleegle**, 801 A.2d 577, 581 (Pa. Super. 2002). The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. **Id.** We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. **Id.** Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. **Id.** If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it. **Id.** … To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

> **Consol. Pennsylvania Coal Co. v. Farmers Nat. Bank of Claysville**, 960 A.2d 121, 128 (Pa. Super. 2008), *reversed on other grounds*, … 969 A.2d 565 ([Pa.] 2009).

**Wright v. Misty Mountain Farm, LLC**, 125 A.3d 814, 818-19 (Pa. Super. 2015).

The trial court applied the foregoing rules of construction, and it concluded that the Miller/Rockwell Deed conveyed only the surface property to Appellees. **See** TCO I at 3-6. The court explained that it first examined the language of the deed, which

> describes the property as being a portion of the property belonging to [Appellees] as derived from the Siesky [Surface]

- 17 -

Deed. Although this is the recital portion of the deed,[7] when reading the deed in its entirety, the court cannot ignore this reference to the chain of title. The recital portion does not mention the deeds that conveyed the mineral estates or the mineral rights themselves.

*Id.* at 5. The trial court further opined that it

look[ed] to the chain of title back to the September 1949 deed that severed the mineral estate from the surface estate. Because the mineral estate was deeded separately from that point forward, these two estates had two separate chains of title. Thus, [the Miller/Rockwell D]eed could not contain what the prior deed in that chain did not convey, namely the mineral rights.

Trial Court Opinion ("TCO II"), 5/16/24, at 2.

Appellants take issue with the trial court's reliance on the recital clause in reaching its conclusion that Appellees only intended to convey a surface estate. *See* Appellants' Brief at 13-14, 18-19. They contend the recital was merely included as "a tool of convenience" to assist in a title search of the property being conveyed, and that nothing in the recital clause itself mentions an interest excepted and reserved by Appellees. *Id.* at 19. *See also id.* (noting "that the deed mentioned in the recital clause excepted and reserved a mineral interest for a previous title holder and not … Appellees themselves"). They further note that, as the drafters of the deed, Appellees bear the burden of "using clear and unambiguous language to make explicit [their] intent to

_____

[7] "A recital is a preliminary statement in a deed explaining the reasons for entering into it or the background of the transaction, or showing the existence of particular facts." 6 Summ. Pa. Jur. 2d Property § 9:98 (2d ed.) (citing Black's Law Dictionary (11th ed. 2019)).

- 18 -

create restrictions or exceptions," and aver that Appellees failed to do so here. *Id.* at 17 (citation omitted).

Appellants maintain "the **true conveyance** … is found on [p]age one of the [Miller/Rockwell D]eed," which states:

> **ALL that certain piece, parcel or tract of land situate in Donegal Township, Westmoreland County, Pennsylvania more particularly bounded and described as follows**, to wit:
>
> BEGINNING at a point in the center of the county line road (PA Legislative Route 64074[)] at land now or formerly of Judith Keyser; thence along said land now or formerly of Judith Keyser North 69° 34' 30" East 200 feet to a point; thence along the same, North 24° 57' 30" West 200 feet to other land of the parties of the first part; thence along said other land of the parties of the first part North 67° 25' 07" East 1051.30 feet to land now or formerly of Michael Tomko; thence along said Tomko land and land now or formerly of Richard Ritenour, South 18° 15' West 679.06 feet to a point; thence along said land now or formerly of Richard Ritenour and land now or formerly of Dale May, South 34° 15' 35" West 448.31 feet to a point; thence along the same, North 46° 59' 45" West 67 feet to a point, thence along the same, South 53° 00' 15" West 357.34 feet to a point in the center of the county line road (PA Legislative Route 64074); thence the center line of said county line road, North 27° 22' West 596.73 feet to a point, the place of beginning.
>
> CONTAINING an area of 14.1429 acres according to survey of Thomas W. Lyons, Jr., Registered Professional Engineer, dated October 1979.

*Id.* at 15 (cleaned up; some emphasis added). Emphasizing that the deed "does not contain any language whatsoever excepting and reserving the mineral rights to said property[,]" *id.* at 16, Appellants conclude that "Appellees conveyed all right, title, and interest in said property including the

- 19 -

mineral interest…." ***Id.*** (citing 21 P.S. § 3 (providing that, unless expressly excepted or reserved, a deed shall be construed to convey "all the estate, right, title, interest, property, claim, and demand … of the grantor…")).

Initially, we observe that Appellants fail to cite any legal authority to support their contention that the clause beginning with, "ALL that certain piece, parcel or tract of land…," followed by the metes and bounds description,[8] represents "the true conveyance" in this matter. ***See id.*** at 15. Thus, to the extent that Appellant's claim is premised on this theory, we deem their argument waived. ***See In re S.T.S., Jr.***, 76 A.3d 24, 42 (Pa. Super. 2013) ("When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived. [M]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter.").

Even if not waived, we would conclude that Appellants' position lacks merit. The metes and bounds description is merely one part of a deed to which courts look when considering the subject of a conveyance. For instance,

---

[8] "Metes and bounds" is defined as "[t]he territorial limits of real property as measured by distances and angles from designated landmarks and in relation to adjoining properties." Black's Law Dictionary (12th ed. 2024).

a deed may also consist of the premises,[9] the habendum clause,[10] and recital clauses. **See Ontelaunee Orchards, Inc. v. Rothermel**, 11 A.2d 543, 545 (Pa. Super. 1940) (stating that the purpose of the habendum clause "is to determine what estate passes"); 6 Summ. Pa. Jur. 2d Property § 9:98 (2d ed.) (explaining that a recital clause "may be used to explain or clarify where the operative words of the deed leave the meaning uncertain"). We have long recognized that when "determining the estate created by a deed, the court will … consider the deed **as a whole**, without regard to its formal division into parts." **Irwin v. Hoffman**, 179 A. 41, 45 (Pa. 1935) (citation omitted; emphasis added). **See also Wright**, 125 A.3d at 819 ("Effect must be given to **all** the language of the [deed], and no part shall be rejected if it can be given a meaning.") (emphasis added).

As to Appellants' remaining assertions, while we agree that Appellees could have used more limiting language in the body of the Miller/Rockwell Deed to make clear their intent to convey only the surface estate, we stress

_____

[9] "The word 'premises' in the law of conveyancing usually means all that part of a deed preceding the habendum clause and containing generally the names or description of the parties, explanatory recitals, a description of the realty, and any exceptions." 26A C.J.S. Deeds § 34.

[10] "A habendum clause is '[t]he part of a deed that defines the extent of the interest being granted and any conditions affecting the grant.'" **Herr v. Herr**, 957 A.2d 1280, 1286 (Pa. Super. 2008) (quoting Black's Law Dictionary (7th ed. 1999)).

that we cannot ignore the recital clause.[11]  *See Wright*, 125 A.3d at 818-19 (establishing that our primary object in construing the deed is to ascertain the parties' intent and that, in doing so, we must give effect to all the language of the deed).  Our courts have often considered recitals when construing a deed. *See Yuscavage*, 137 A.2d at 242 (indicating that "where the terms are uncertain or contradictory, reference may be made to the recital to determine the intention of the parties"); *In re Wilson's Estate*, 70 A.2d 354, 356 (Pa. 1950) (acknowledging that courts may look to the recital to reveal the general purpose of a deed, where the recital does not conflict with the habendum); *Pennsylvania Horticultural Society v. Craig*, 87 A. 678, 682 (Pa. 1913) (upholding a century-old rule of construction, which states that when a grantor's words "are preceded by an explanatory recital[,] they are to be interpreted in subordination to the general purpose") (citation omitted).

Sometimes, a recital clause is put into a deed "for the purpose of calling attention to the links in the chain of title."  *Consol Pennsylvania Coal Co.*, 960 A.2d at 129 (quoting *Fidelity Mortgage Guarantee Co. v. Bobb*, 160

---

[11] In reaching this conclusion, we have not overlooked our Supreme Court's proclamation that a recital "can neither diminish nor qualify the grant if that operative part of the deed is certain and definite[,]" *Yuscavage v. Hamlin*, 137 A.2d 242, 245 (Pa. 1958), or this Court's declaration that "where the recital and operative part of the deed conflict, the operative part prevails if certain and definite."  *Ontelaunee Orchards, Inc.*, 11 A.2d at 545-46. These principles are simply inapplicable here.  The Miller/Rockwell Deed is void of any language expressly conveying the coal or other minerals underlying the surface property, and it conspicuously omits any reference to the chain of title associated with the mineral estate.  Thus, the recital does not diminish the conveyance or conflict with another part of the deed.

A. 120, 121 (Pa. 1932)).  We believe that to be precisely the case here, where the recital expressly states that the property conveyed is "a portion of" the property conveyed by the Siesky Surface Deed and references the recording information for said deed.  **See Jennings v. Bloomfield**, 49 A. 135, 136 (Pa. 1901) ("A recital in a deed is notice to the purchaser of the fact recited."); Complaint, Exhibit F at 2 (providing the recording information for the Siesky Surface Deed).  To ignore this recital to the chain of title would go against our long-standing principle of giving effect to **all parts** of a deed.  **See Yuscavage**, 137 A.2d at 245 (emphasizing "one of the cardinal principles in the construction of deeds, *i.e.*, that no part shall be rejected if it can be given a meaning") (citations omitted).

Moreover, it has long been established that "a grantee is chargeable with notice of everything affecting his title which could be discovered by an examination of the records of the deeds…." **Finley v. Glenn**, 154 A. 299, 301 (Pa. 1931).  In **Finley**, our Supreme Court dictated: "The rule has always been that the grantee must search for conveyances made by anyone who has held the title." **Id.** (citation omitted; some formatting altered).  The Court elaborated, explaining that not only does a grantee have a duty to read the description of the property conveyed in a prior deed in the chain of title, but the grantee also has a duty "to read the deed **in its entirety**, to note anything else which might be set forth in it." **Id.** (emphasis added).  It emphasized that the grantee is charged with notice "of **all** [the prior deed] contained; otherwise[,] the purpose of the recording acts would be frustrated." **Id.**

(emphasis added).[12] *See also id.* at 302 ("The record of a deed is constructive notice of its contents to those who are bound to search for it.") (citation omitted).

Consequently, in the case *sub judice*, Appellants are charged with notice of the contents of the prior deeds in the Bunting Property chain of title, *i.e.*, the Gearhart Surface Deed, the Miscove Surface Deed, and the Siesky Surface Deed. Thus, we review the contents of these deeds in the record. We agree with the trial court that the Bunting Property can be traced back to the Gearharts, who conveyed 146 acres of real property to the Miscoves in 1949. *See* TCO I at 3; Complaint at ¶ 18. There is no question that the mineral estate was severed from the surface estate at that time by the execution of the Gearhart Surface Deed, which excepted and reserved all the coal and related mining rights underlying the surface estate, and conveyed only a surface estate to the Miscoves. TCO I at 3; Complaint, Exhibit A at 2. *See also Wright*, 125 A.3d at 820 ("Title to the thing subject to an exception remains with the grantor."). The Miscoves then conveyed 146 acres of surface property to the Sieskys, who in turn conveyed that same surface estate to Appellees. TCO I at 3.

_____

[12] *See Finley*, 154 A. at 301 (citing 21 P.S. § 444 (requiring all deeds and conveyances "made and executed within this [C]ommonwealth of or concerning any lands, tenements or hereditaments in this [C]ommonwealth," to be recorded)). The Court explained, "The purpose in recording is to give notice … not only of the land conveyed but … of anything whereby the title may be in any manner affected…." *Id.* at 301-02.

The Miller/Rockwell Deed describes the conveyance as being "a portion of the property conveyed" to Appellees by the Sieskys and omits any reference to the chain of title for the mineral estate that Appellees separately acquired. TCO I at 4; Complaint, Exhibit F at 2. The Siesky Surface Deed clearly and unambiguously excepts and reserves from the tract of land described therein "all coal in and under said tract, together with the right to mine and remove all said coal…." TCO I at 3-4; Complaint, Exhibit D at 2. Based on the foregoing, we conclude Appellants had constructive notice that the Miller/Rockwell Deed conveyed only a surface estate. *See Finley*, *supra*. We discern no error or abuse of discretion in the trial court's consideration of the recital in the Miller/Rockwell Deed and the language of the Siesky Surface Deed to determine that Appellants conveyed the surface estate only to Appellants. *See Wagner v. Landisville Camp Meeting Ass'n*, 24 A.3d 374, 380 (Pa. Super. 2011) (referencing language of earlier deeds in the chain of title to eliminate any uncertainty over the type of estate conveyed in the deeds at issue).

*2. Coal Notices*

Appellants further contest the trial court's determination that the coal notices provided Appellants with notice of Appellees' intention to except and reserve their mineral interest in the subject property. Appellants' Brief at 18. As mentioned *supra*, the Miller/Rockwell Deed contained two coal notices: one pursuant to 52 P.S. § 1406.14, and the other in compliance with 52 P.S. § 1551. We address each of these notices separately.

Section 1406.14 of the Subsidence Act provides:

[T]he grantor in every deed for the conveyance of surface land in a county in which bituminous coal has been found and is separately assessed for taxation shall certify in the deed whether any structure then or thereafter erected on the land so conveyed is entitled to support from the underlying coal. If the grantor shall not certify that there is such a right of support, the grantee shall sign a statement printed in the deed in a contrasting color with no less then twelve point type that **he knows that he may not be obtaining the right of protection against subsidence resulting from coal mining operations and that the purchased property may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in the coal**. Such statement shall be preceded by the word "Notice" printed in the same color as the statement with no less than twenty-four point type.

*Id.* at 21 (quoting 52 P.S. § 1406.14) (emphasis added by Appellants).

With respect to the Section 1406.14 notice, Appellants acknowledge that it was properly included in the deed in compliance with the Subsidence Act; however, they aver that the language of the notice "[does] not limit the right, grant, or title from … Appellees to … Appellants." *Id.* They contend that it "merely indicate[s] … Appellants **may not** be obtaining the right of protection against subsidence resulting from coal mining operations." *Id.* at 22 (emphasis in original). Appellants have failed to convince us that this claim merits relief.

"The intent of the [Subsidence Act] is for surface owners to be made aware of the existence of any mine under their land and whether that mine is being actively worked, giving rise to subsidence hazards against which the surface owners then have the opportunity to protect themselves." ***Patton v.***

*Republic Steel Corp.*, 492 A.2d 411, 415-16 (Pa. Super. 1985). Hence, Section 1406.14 requires grantors of surface land "to certify whether the estate being conveyed includes the right of support and to state that such rights may be purchased from the owners of the mineral estate if the land is not now so protected." *Id.* at 416. Here, it is undisputed that Appellants signed the Section 1406.14 notice, acknowledging that they were aware they "may not be obtaining the right of protection against subsidence resulting from coal mining operations…." Complaint, Exhibit F at 2. Providing grantees with such awareness is precisely what the notice is intended to do. *See Patton*, *supra*. The trial court made no finding, nor did Appellees suggest, that the Section 1406.14 notice in any way limited the conveyance from Appellees to Appellants.

With respect to the second coal notice, we note that Section 1551 provides:

> (a)  **Every deed**, agreement of sale, title insurance policy and other instrument in writing, except a mortgage, a quitclaim deed or an agreement to convey by quitclaim, hereafter executed and delivered with respect to the surface of land and for the purpose of selling, conveying, transferring, agreeing to sell, convey, or transfer, or for insuring or agreeing to insure the title to said surface of land, **shall, if any of the conditions of subsection (b) of this section are present,**[13] **include therein**, set forth entirely either

---

[13] Subsection (b) provides, in pertinent part, that the notice prescribed by subsection (a) must be included "if there is, or has been, a prior severance of record … of any coal underneath any part of the surface referred to in subsection (a) of [this section]…." 52 P.S. § 1551(b)(1).

in capital letters of in type or writing distinctively different from the balance of the instrument or set apart from the balance of the instrument by underlining, **a prominent notice either in the form of one of the following paragraphs** or else in a form which is essentially the same as and which expresses precisely the same meaning and notice as one of said following paragraphs:

(1)  "**This document may not sell, convey, transfer, include or insure the title to the coal and right of support underneath the surface land described or referred to herein**, and the owner or owners of such coal may have the complete legal right to remove all of such coal and, in that connection, damage may result to the surface of the land and any house, building or other structure on or in such land.  The inclusion of this notice does not enlarge, restrict or modify any legal rights or estates otherwise created, transferred, excepted or reserved by this instrument."

(2)  "**This document does not sell, convey, transfer, include or insure the title to the coal and right of support underneath the surface land described or referred to herein**, and the owner or owners of such coal have the complete legal right to remove all of such coal and, in that connection, damage may result to the surface of the land and any house, building or other structure on or in such land.  The inclusion of this notice does not enlarge, restrict or modify any legal rights or estates otherwise created, transferred, excepted or reserved by this instrument."

52 P.S. § 1551(a)(1), (2) (emphasis added).

Because there was a prior severance of the coal estate from the surface estate in this case, Section 1551 mandated the inclusion of a notice consistent with **either** subsection (a)(1) **or** (a)(2).  *See id.* at (a), (b).  The only difference between the language in the two subsections is that the (a)(1) notice indicates the document "**may** not" convey title to the coal and right of support, whereas the (a)(2) notice states that the document "**does** not"

convey title to the coal and right of support. **See id.** at (a)(1), (2) (emphasis added). Here, the Miller/Rockwell Deed contains language consistent with Section 1551(a)(1). **See** Complaint, Exhibit F at 3 ("THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SURPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN….").

Appellants suggest that Appellees intentionally chose to include the language set forth in subsection (a)(1), as opposed to the language in subsection (a)(2). Appellants' Brief at 23. As such, they aver that the Section 1551(a)(1) notice "merely provided notice to … Appellants that a previous instrument in the chain of title **may** have reserved the mineral interest with respect to the property described in the deed." **Id.** at 24 (emphasis added). They add that the inclusion of this notice "simply met a statutory obligation imposed upon [Appellees] rather than to reserve [*sic*] any right to title." **Id.** at 25. Thus, they conclude that the trial court's "analysis" regarding the notice "was in error." **Id.** Again, we are not persuaded that Appellants are entitled to relief.

As the trial court explained, the Miller/Rockwell Deed contains a notice in compliance with 52 P.S. § 1551, which "is only required when conveying surface property if there is, or has been, a prior severance of record … of any coal underneath any part of the surface…." TCO I at 5 (internal quotation marks omitted). Thus, the trial court concluded:

> The notice clearly alerts the purchaser (in this case[, Appellants]) that the current deed deals with surface rights on a property where a mineral estate has been severed. This provides ample notice to the purchaser to determine if the deed presently deals with a mineral estate by reviewing the chain of title.

*Id.* Regardless of whether Appellees chose to include language indicating that the deed "may not" or "does not" convey title to the coal, the inclusion of the Section 1551 notice was sufficient to put Appellants on notice that the conveyance involved property where coal had been severed from the surface estate. *See* 52 P.S. § 1551(a), (b)(1). Nevertheless, it was Appellants' duty to examine the deed records — with or without the inclusion of any coal notice — to determine the nature of the conveyance. *See Finley*, *supra*.

### 3. Doctrine of Merger of Estates

Appellants also claim the trial court erred in concluding that the doctrine of merger of estates is inapplicable to this case. Appellants' Brief at 30-31. "Under the doctrine of merger of estates, a **lesser** estate is merged into a **greater** estate whenever the two estates meet in the same person." 6 Summ. Pa. Jur. 2d Property § 5:3 (2d ed.) (emphasis added; citations omitted). *See also Griffith v. McKeever*, 103 A. 335, 336 (Pa. 1918) ("[W]henever a greater estate and a less meet in the same person, the less is merged or drowned in the greater. And this doctrine has been consistently applied in the courts of this state.") (citing *Kreamer v. Fleming*, 43 A. 388 (Pa. 1899)).[14]

---

[14] The doctrine of merger of estates is not to be confused with the doctrine of merger of lots, which is concerned with the physical merger of parcels of land. *See Loughran v. Valley View Developers, Inc.*, 145 A.3d 815, 819 n.4
*(Footnote Continued Next Page)*

- 30 -

However, "[m]erger is a question of intent, and will not take place against the wishes of the party to be affected by it; and, where it is against the interest of the person holding the respective titles, the law will not presume an intent to merge." *Id.* (quoting **Appeal of Fink**, 18 A. 621 (Pa. 1889)). We further note:

> The doctrine of legal merger, under which the intent of the parties as to whether a merger occurred is immaterial, is now practically extinct, and equitable principles are generally applied to merger claims. The modern approach, sometimes referred to as … the "anti-merger doctrine," is that a merger is not favored unless it is necessary to prevent injustice.

6 Summ. Pa. Jur. 2d Property § 5:3 (2d ed.) (citing 28 Am. Jur. 2d Estates § 370 ("Under this view, merger is never allowed unless for special reasons and to promote the intention of the parties. That is, equity will prevent or permit a merger of estates as best serves the purposes of justice and the actual intent of the parties, whether express or implied.")).

In support of their position that the Miller/Rockwell Deed conveyance included the coal rights, Appellants appear to argue that the surface estate and the mineral estate merged into one estate after meeting in Appellees'

_____

(Pa. Cmwlth. 2016). **See also** 28 Am. Jur. 2d Estates § 370 (cautioning that the doctrine of merger of estates applies to different estates in the same parcel of land, not to interests in two separate parcels of land). We recognize "[t]his Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." **Petow v. Warehime**, 996 A.2d 1083, 1088 n.1 (Pa. Super. 2010) (citations omitted). Given the antiquated nature of the law regarding merger of estates, we deem it appropriate to look for guidance from our sister Court.

possession. **See** Appellants' Brief at 30-33; **but see** Appellees' Brief at 11-12 (maintaining that the merger doctrine should not effectuate a merger here, where Appellees acquired fee simple estates in both the surface estate and mineral estate by separate chains of title prior to conveying the surface estate to Appellants). In their attempt to apply the merger doctrine, Appellants presume that the surface estate and mineral estate constitute a lesser and a greater estate; however, they fail to provide any Pennsylvania case law in support of this presumption.[15] Nor do Appellants cite any Pennsylvania cases in which the merger doctrine was applied to merge estates of equal stature.[16] For the following reasons, Appellants' argument fails.

As the trial court noted, in the case *sub judice*, there are two distinct chains of title on the property — one for the surface estate and one for the mineral estate. TCO I at 5. Both of these estates are held in fee simple. **See id.** (emphasizing that these estates are "two separate and whole fee simple estates"); **id.** at 6 (noting that the deed records clearly indicate a split into two complete fee simple estates in 1949). A "'fee simple' is the greatest interest one can have in land. It represents an entire and absolute interest in

---

[15] **See** Appellants' Brief at 31 (suggesting that this Court has never addressed the issue of whether a severed surface estate and mineral estate are considered to be a lesser and greater estate, thereby subjecting the estates to merger).

[16] Appellants only cite cases involving the merger of a lesser dower estate into a greater fee simple estate, or cases involving the merger of lots, which are inapplicable here. **See** Appellants' Brief at 30 (citing **Griffith**, 103 A. at 335; **Loughran**, 145 A.3d at 815; **Tinicum Tp. v. Jones**, 723 A.2d 1068 (Pa. Cmwlth. 1998); **Appeal of Gregor**, 627 A.2d 308 (Pa. Cmwlth. 1993)).

property." 6 Summ. Pa. Jur. 2d Property § 5:5 (2d ed.).[17] Hence, the trial court considered the title to the surface rights and the title to the mineral rights to be two separate and **equal** estates and concluded that the doctrine of estates does not apply. *See* TCO I at 5-6.

In reaching this decision, the trial court relied on an analogous case, ***Harteis v. Cronauer***, 2011 WL 1750198 (Pa.Com.Pl. Apr. 11, 2011), which was addressed by both parties below.[18] *See id.* at 5-6; TCO II at 3 (concluding that the ***Harteis*** court "persuasively held that Pennsylvania precedent law will not support the merger of two separate, co-equal property estates in a situation such as the one at bar, where there are two separate chains of title"). Like the trial court, we find the ***Harteis*** decision particularly

---

[17] ***See also Nicolette v. Allegheny County Airport Authority***, 841 A.2d 156, 161 n.11 (Pa. Cmwlth. 2004) ("An estate in fee simple is the greatest estate and most extensive interest which a person can possess in landed property, being an absolute estate in perpetuity and embracing all of the estates that may be carved therefrom. A title in fee or fee simple is a full and absolute estate, beyond and outside of which there is no other interest or right.").

[18] We reject Appellants' attempt to distinguish ***Harteis*** from this case by asserting that "the ***Harteis*** decision focused solely on the oil and gas rights … and did not discuss the mineral interests associated with coal…." Appellants' Brief at 31. "[T]he Pennsylvania rule permitting severance of the mineral estate for coal and other solid minerals applies with equal force to oil and gas." ***Hetrick v. Apollo Gas Co.***, 608 A.2d 1074, 1077 (Pa. Super. 1992) (citation omitted). "[O]il and gas … are part of the land while they are in place. They can be severed from the ownership of the surface by grant or exception as separate corporeal rights." ***Duquesne Natural Gas Co. v. Fefolt***, 198 A.2d 608, 610 (Pa. Super. 1964). "So far as the law of property is concerned[,] the ownership of oil and gas is similar to that of coal, where there are three estates, the coal itself, the surface[,] and the right of support." ***Id.***

- 33 -

instructive on this matter of first impression before our Court.[19]  As such, we examine the relevant details of that case and the reasoning of the Cambria County Court of Common Pleas.

In **Harteis**, the plaintiffs acquired the surface rights, as well as the oil and gas rights, to the same tract of land via two separate chains of title.[20] They subsequently conveyed the surface estate only to Joseph and Sandra Harteis, by deed dated January 11, 2008, which was made subject to the reservations in all prior deeds and indicated that it conveyed "the same property that [the p]laintiffs received from Thomas and Carolyn Harteis in the April 7, 1994 deed."  **Harteis**, 2011 WL 1750198 at *1.  On June 28, 2008, Joseph and Sandra Harteis deeded their interest in the surface rights to the

---

[19] "We recognize that decisions of the Court of Common Pleas are not binding precedent; however, they may be considered for their persuasive authority." **Hirsch v. EPL Technologies, Inc.**, 910 A.2d 84, 89 n.6 (Pa. Super. 2016).

[20] The mineral estate was severed from the surface estate in 1985, when the owner at the time, Penn Central Corporation and Penn Central Properties ("Penn Central"), deeded the surface estate only to Thomas and Carolyn Harteis and expressly reserved the mineral rights.  **Harteis**, 2011 WL 1750198 at *1.  Then, in 1988, Penn Central conveyed the oil and gas rights only to Lawrence and Ruth Harteis by means of a quitclaim deed.  The coal and other mineral rights remained with Penn Central.  **Id.**  By deed dated April 7, 1994, Thomas and Carolyn Harteis conveyed the surface estate to the plaintiffs.  "This deed was made subject to all reservations contained in prior deeds and specifically referenced the July 31, 1985 deed, which reserved the coal, gas, and mineral rights."  **Id.**  By deed dated May 11, 1994, Lawrence and Ruth Harteis conveyed their interest in the oil and gas rights to the plaintiffs.  **Id.**

defendant, "again making the conveyance subject to all reservations contained in the prior deeds." *Id.* at *2.

After both the plaintiffs and the defendant filed separate, competing oil and gas leases, the plaintiffs filed an action to quiet title regarding their ownership of the oil and gas rights. *Id.* The defendant argued that the doctrine of merger of estates applied, meaning that "once [the plaintiffs] obtained both the surface and oil and gas rights[,] … these two estates merged into one" and the deed conveyance to the defendant "effected a transfer of both interests…." *Id.* The plaintiffs countered that "the doctrine of merger of estates is inapplicable where, as here, the estates are not a greater and lesser estate but equal estates with separate chains of title." *Id.* Consequently, the plaintiffs argued that the deed to the defendant clearly conveyed only the surface estate. *Id.* The trial court granted summary judgment in favor of the plaintiffs and held "that the merger of estates doctrine applies only to different estates in land and not to different divisions in a tract of land where such divisions create two or more separate and equal fee-simple estates each with its own chain of title." *Id.*

The *Harteis* court observed that the doctrine of merger of estates has only been applied in Pennsylvania to merge lesser equitable estates, such as easements and dowers estates, into the greater fee simple estate. *See id.* at *3 (citing *McClure v. Monongahela Southern Land Co.*, 107 A. 386, 388 (Pa. 1919); *Kreamer*, 43 A. at 388; *Wedge v. Schrock*, 22 A.2d 305 (Pa.

Super. 1941)). It further noted that "[p]roperty law in Pennsylvania differs from that in many of our sister states," *id.*, adding:

In most other states, coal estates are not treated as separate estates from surface estates. However, Pennsylvania is unique from other states in that it has long recognized three separate estates in land — surface, coal/mineral[, and] the right to support. All three estates may be owned separately and taxed separately, although the right to support is generally owned by either the owner of the surface or coal estate.

*Id.* (quoting ***Machipongo Land & Coal Co., Inc. v. Com., Dept. of Environmental Resources***, 719 A.2d 19, 28 (Pa. Cmwlth. 1998) (internal citations omitted)).

The ***Harteis*** court indicated that it was unaware of any other Pennsylvania case where a party sought to apply the doctrine of merger to merge one fee simple estate into another. *Id.* However, it noted that the Texas Supreme Court faced the identical question in ***Humphreys-Mexia Co. v. Gammon***, 254 S.W. 296 (Tex. 1923), and that the ***Humphreys*** Court held the merger doctrine cannot be applied to merge two separate fee simple estates. *Id.* The ***Harteis*** court rejected the defendant's attempt to distinguish ***Humphreys*** and opined:

While there are undoubtedly numerous differences in the laws of the two states[,] it is clear that both apply the merger doctrine in a similar fashion and that both recognize that a single tract of property may be split into different fee[]simple estates that create different divisions in the same land[;] thus[,] the [c]ourt concludes that while not controlling[,] ***Humphreys*** is nonetheless instructive on this issue.

In ***Humphreys***[,] the surface and mineral rights were severed by various deeds and Gammon sought to apply the doctrine of

merger to merge the titles to his advantage. The Texas Supreme Court began by explaining that in Texas, like Pennsylvania, a single tract of land may be divided severing the surface, mineral, oil, gas, and other rights into separate fee[]simple estates. **Humphreys**[,] … 254 S.W. at 299. The Court held that[:]

> The doctrine of merger can have no application to the state of facts before us. This doctrine applies to estates in land into which the original estate in fee simple may have been divided, as an estate for years or for life, and not to the different divisions of a tract of land, whether these divisions are horizontal or vertical. It is only when these less estates meet in one and the same person that the doctrine of merger applies, and the lesser estates are merged in a larger, or in the estate in fee simple.
>
> …
>
> **There can be but one estate in fee simple to a particular described tract of land and[,] therefore[,] there can never be a merger of two estates in fee simple to the same land.** Only estates subordinate to the fee in duration or privilege may merge with it or with each other….

**Id.** at *3-4 (quoting **Humphreys**, 254 S.W. at 301-02) (emphasis added).

The **Harteis** court then surmised that Pennsylvania, like Texas, has long recognized a tract of land may be divided into different and **equal interests**, each of which may be held by different persons in fee simple. **Id.** at *4 (citing **Chartiers Block Coal Co. v. Mellon**, 25 A. 597 (Pa. 1893)). It noted that our courts first addressed a surface owner's rights relative to the subsurface owner's rights in **Chartiers**, where our Supreme Court explained:

> Formerly[,] a man who owned the surface owned it to the center of the earth. Now[,] the surface of the land may be separated from the different *strata* underneath it, and there may be as many different owners as there are *strata*. … [I]t often happens that the owner of a farm sells the land to one man, the iron or oil or gas to another, giving to each purchaser a deed or conveyance in fee simple for his particular deposit or *stratum*, while he retains

the surface for settlement and cultivation, precisely as he held it before. The severance is complete for all legal and practical purposes. Each of the separate layers or *strata* becomes a subject of taxation, of incumbrance, levy, and sale, precisely like the surface.

*Id.* at *4-5 (quoting **Chartiers**, 25 A. at 598 (emphasis in original)). "Given this history," the **Harteis** court concluded, "it is clear that the doctrine of merger may not be applied to merge distinct fee[]simple estates one into another as each estate is equal to the other and none is a greater or lesser estate." **Id.** at *5. **See also id.** ("Accordingly, the fact that in May of 1994[,] the [p]laintiffs came to own both the surface rights and the oil and gas rights did not result in a merger of those separate interests into a single interest[.]").

Following **Harteis**, the trial court in the case *sub judice* determined that the doctrine of merger of estates did not apply, where there are two separate and equal fee simple estates, each with their own chain of title. TCO I at 5. Accordingly, it concluded: "Where the [Miller/Rockwell D]eed only references the [Siesky Surface D]eed, the court cannot infer that a wholly separate fee simple estate that is not referenced is also included." **Id.** at 6. The trial court further opined:

> This reasoning is in accord with the general rule in Pennsylvania, which states that "a grantee is chargeable with notice of everything affecting his title which could be discovered by an examination of the records of the deeds or other muniments of title of his grantor." **Southall v. Humbert**, 685 A.2d 574, 578 (Pa. Super. 1996). The chain of title related to the Property clearly shows a split into two complete fee simple estates in 1949. The [Miller/Rockwell D]eed is a continuance of the surface estate's chain of title from the 1972 and 1950 deeds; these are entirely separate from the 1975 coal rights deeds which comprise their own chains of title. This information was available to [Appellants]

prior to executing the [Miller/Rockwell D]eed, and had they desired to pursue the mineral estate as well, they could have done so.

TCO I at 5-6. We discern no error of law or abuse of discretion by the trial court.[21]

### 4. Genuine Issue of Material Fact

Finally, Appellants argue that the trial court erred in determining that no genuine issue of material fact existed with respect to Appellees' declaratory judgment claim. Appellants' Brief at 25. Specifically, they contend that both parties submitted reports from expert witnesses regarding the title to the mineral estate, and that the experts' contradictory conclusions present a genuine issue of material fact. *Id.* at 29-30. **Compare** Appellants' Brief in Opposition to Appellees' Motion for Summary Judgment, Exhibit A (Appellants' expert title witness concluding that the Miller/Rockwell Deed conveyed the surface and mineral rights to Appellants), **with** Appellees' Response to

---

[21] Nevertheless, even if the merger doctrine were deemed applicable here, we would not presume an intent to merge where a merger of the two estates would be against Appellees' interest. **See Griffith**, **supra**. **See also Penington v. Coats**, 1841 WL 4000 at *5 (Pa. Jan. 1, 1841) ("[E]quity does not favour mergers; and in law, mergers are said to be odious."); **Id.** ("[G]enerally, … merger depends on intention; and it is only, in those cases, where it is perfectly indifferent to the party in whom the interests have united … that in equity the term is merged." (citing **Dougherty v. Jack**, 1836 WL 3076 at *3 (Pa. Jan. 1, 1836))); 143 A.L.R. 93 ("In the absence of an expressed intent, the intention of the parties will be presumed according to the interest of the party in whom the two estates unite; and if the interest of the person in whom the several estates have united would be best subserved by keeping them separate, the intent to do so will ordinarily be implied." (citing, *inter alia*, **Waldron v. Wahl**, 133 A. 252 (Pa. 1926))).

Appellants' Motion for Summary Judgment, Exhibit A (Appellees' expert title witness concluding that the Miller/Rockwell Deed conveyed only the surface estate to Appellants). However, Appellants aver that the trial court failed to consider the parties' expert reports when granting Appellees summary judgment. Appellants' Brief at 29. No relief is due on this claim.

As the trial court stated, the issue in both parties' cross-motions for summary judgment "was a matter of deed interpretation, which is properly a matter for the court." TCO II at 2-3 (citation omitted). Accordingly, it noted, "[t]here was … no question of material fact to submit to any fact finder." *Id.* at 3. *See also Starling v. Lake Meade Prop. Owners Ass'n, Inc.*, 162 A.3d 327, 340 (Pa. 2017) ("The meaning of a deed — that is, what it covers — is a question of law for the court…." (quoting *Miles Land Co. v. Hudson Coal Co.*, 91 A. 1061, 1064 (Pa. 1914))).[22]

---

[22] The case law relied on by Appellants in support of their contention that the trial court erred in failing to consider the expert reports is distinguishable from the case *sub judice*. *See* Appellants' Brief at 29 (citing *Bourgeois v. Snow Time, Inc.*, 242 A.3d 637 (Pa. 2020); *Summers v. Certainteed Corp.*, 997 A.2d 1152 (Pa. 2010)). Both *Bourgeois* and *Summers* involved questions of fact, whereas the instant matter involves a question of law. *See Bourgeois*, 242 A.3d at 652 (concluding that where expert reports raised genuine issues of material fact regarding claims of gross negligence and recklessness, the Superior Court erred in excusing the trial court's failure to view the experts' conclusions in the light most favorable to the non-moving party); *Summers*, 997 A.2d at 1165-66 (determining that in a strict liability action against asbestos manufacturers, where the proximate cause for the appellants' symptoms was a disputed issue of fact for the jury, the trial court erred in rejecting the appellants' expert's opinion that exposure to asbestos in the workplace was the cause and/or substantial contributing factor to the appellants' symptoms).

Our Supreme Court explained:

The same principles that apply to the interpretation of a contract apply to the interpretation of a deed. *See New Charter Coal Co. v. McKee*, … 191 A.2d 830, 834 ([Pa.] 1963). The nature and quantity of the interest conveyed by a deed "must be ascertained from the instrument itself." *In re Property of W.R. Covert*, 186 A.2d 20, 23 (Pa. 1962) (quoting *Yuscavage*…, … 137 A.2d [at] 244…)).

*Starling*, 162 A.3d at 341. Moreover, this Court has established:

In the absence of fraud, accident or mistake, the nature and quantity of the real estate interest conveyed must be ascertained from the deed itself and cannot be shown by parol. When the language of the deed is clear and free from ambiguity, the intent of the parties must be determined from the language of the deed.

*Wright*, 125 A.3d at 819 (quoting *Wysinski v. Mazzotta*, 472 A.2d 680, 682-83 (Pa. Super. 1984)).

Instantly, neither party alleges that the Miller/Rockwell Deed is the product of fraud, accident, or mistake. Nor do they allege any ambiguity in its terms. Hence, we conclude that the trial court properly interpreted the deed based on the instrument itself. Viewing the record in the light most favorable to Appellants, we discern no genuine issue of material fact that would preclude the entry of summary judgment in favor of Appellees.

B. Quiet Title

In their second issue, Appellants assert that the trial court erred in granting Appellees summary judgment with respect to their quiet title claim. Before considering the merits of this claim, we review the relevant substantive law.

"The purpose of a quiet title action is to settle competing claims to interests in property or to determine right or title or the validity of any deed affecting any interest in land." ***Cornwall Mountain Investments, L.P. v. Thomas E. Proctor Heirs Trust***, 158 A.3d 148, 160 (Pa. Super. 2017). "The litigation of an action to quiet title is an action at law governed by the Rules of Civil Procedure." ***Stoley v. Wampler***, 317 A.3d 1007, 1016 (Pa. Super. 2024) (citing Pa.R.Civ.P. 1061-1068).

Pursuant to Rule 1061(b), an action to quiet title may be brought:

(1)   to compel an adverse party to commence an action of ejectment;

(2)   where an action of ejectment will not lie, to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land;

(3)   to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land; or

(4)   to obtain possession of land sold at a judicial or tax sale.

Pa.R.Civ.P. 1061(b)(1)-(4).[23]  We further recognize that "the plaintiff bringing a quiet title action[] has the burden of proof and must recover on the strength

_____

[23] This Court has explained the difference between an action to quiet title and an action of ejectment as follows:

"[An action to] quiet title serves to determine the relative and respective rights of all potential title holders." ***Becker v. Wishard***, 202 A.3d 718, 721-22 (Pa. Super. 2019).  "The purpose of an ejectment action as opposed to quiet title is not to determine the relative and respective rights of all potential title holders, but

*(Footnote Continued Next Page)*

of its own title." ***Herder Spring Hunting Club v. Keller***, 143 A.3d 358, 372 (Pa. 2016) (citation omitted).

Initially, we note that Appellees' action to quiet title, in which they sought a determination of their title to the mineral estate underlying the Bunting Property, was appropriate under Pa.R.Civ.P. 1061(b)(2). ***See Stoley***, 317 A.3d at 1017 (determining that a claim pursuant to Rule 1061(b)(2) is appropriate where "no action in ejectment is available because the complaint does not involve whether someone out of possession should be in possession, but rather … the plaintiffs seek a decision from the court about something purporting to affect their interest in the land"); ***id.*** ("Examples of subsection (b)(2) actions include whether the plaintiffs took title subject to a mortgage, had an easement by implication, or had a right to extract subsurface minerals from the land in question….").

Here, Appellants claim that the trial court erred as a matter of law in determining Appellees satisfied their burden to sustain their action in quiet title. Appellants' Brief at 33. They argue that Appellees failed to prove the strength of their title to the mineral estate, *i.e.*, Appellees' Coal Property, is superior to that of Appellants, nor did they show that no genuine issue of material fact exists with respect to said claims. ***Id.*** at 34.

---

rather the immediate rights between [the] plaintiff and defendant involved in that particular litigation." ***Siskos v. Britz***, … 790 A.2d 1000, 1006 ([Pa. ]2002) (internal quotation marks omitted).

***Stoley***, 317 A.3d at 1016 n.5.

Having determined that the trial court properly resolved the title issue, declaring Appellees the rightful owners of Appellees' Coal Property, we agree with the trial court that Appellees "are necessarily entitled to judgment on the quiet title action as well." TCO II at 4. The trial court did not err or abuse its discretion.

Accordingly, we affirm the order entered on February 28, 2024, in the Court of Common Pleas of Westmoreland County, granting summary judgment in favor of Appellees.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/08/2025